Dawson v. McFaddin.

WILLIAM J. DAWSON, GEORGE T. DAWSON, AND FAN-
NIE M. DAWSON, APPELLANTS, v. ELEANOR J. MC-
FADDIN, FORMERLY ELEANOR J. DAWSON, AND T.
JAMES MCFADDIN, HER HUSBAND, APPELLEES.

22  131
26  721
22  131
31  524
22  131
43  845

Equity protects a parol gift of land equally with a parol agree-
ment to sell it, if accompanied by possession, and the donee, in-
duced by the promise to give it, has made valuable improvements
on the property. *Neale v. Neale*, 9 Wall., 1.

APPEAL from the district court for Johnson county.
Heard below before BROADY, J.

*S. P. Davidson*, for appellants.

*T. Appleget & Son*, for appellees.

COBB, J.

This cause comes upon appeal from the district court of
Johnson county. The following statement of the case I
adopt from the brief of appellants as entirely fair and suf-
ficiently full for the purpose of this opinion:

" On February 5th, 1885, the plaintiffs filed their peti-
tion, alleging that on or about January 11th, 1881, de-
fendant Eleanor J. McFaddin, then Eleanor J. Dawson,
held and controlled divers large sums of money and other
property in which plaintiffs owned large interests, and for
the purpose of distributing to plaintiffs a portion of the
property aforesaid belonging to them or in which they were
interested, and in payment of services performed by plaint-
iffs for defendant at her request, defendant purchased the
east half of the north-west quarter and the east half of the
south-west quarter of section 25 in township 5 north, of
range 9 east, in Johnson county, Nebraska, and paid for it
out of the said money and property so belonging to plaint-

iffs, and at the same time agreed to convey the same to said William J. Dawson, for himself and his co-plaintiffs, as soon as he became of age, and on the day last aforesaid said defendant delivered possession of said land to plaintiff William J. Dawson, for himself and his co-plaintiffs, in pursuance of said agreement, and they have remained in exclusive possession thereof ever since. Said plaintiffs have punctually and strictly done and performed all and singular the argreements and undertakings on their part to be kept and performed; and have carefully cared for and guarded and improved said land by virtue and in pursuance of said agreement. Plaintiffs aver that when said land was so purchased by defendant, it was so purchased for the use and benefit of plaintiffs, or two of them, and being brothers and sister they have agreed to share the same equally, and they are the real owners of said land, while defendant holds the bare legal title for the purpose aforesaid. Defendant T. James McFaddin has since married defendant Eleanor J. McFaddin, well knowing all the above facts. Plaintiff William J. Dawson became of age May 7th, 1881, and George T. Dawson became of age April 5th, 1884, and Fannie M. Dawson became of age December 9th, 1884. Plaintiffs have frequently requested defendants to execute and deliver the deed conveying said land to them, which defendants have heretofore refused and still do refuse to do. Plaintiffs are entirely without remedy unless this court will take cognizance of this whole matter, and grant relief. Plaintiffs pray that defendants be enjoined from prosecuting any suits to oust them from said land and from molesting plaintiffs in the use and occupancy thereof. That defendants be required to specifically perform their above mentioned agreement, and execute and deliver a good and sufficient warranty deed conveying said land to plaintiffs, and in default of compliance with said requirement that the decree of court operate as such conveyance; and that plaintiffs may have general relief.

"Defendant Eleanor J. McFaddin, on the 18th day of November, 1885, filed her answer, in which she alleges that she agreed to convey the said land only when herself and other creditors of one Ralph Dawson were paid the claims they held against him, and that said claims have not been paid. Also that the notice to quit said premises and the threat to oust plaintiffs were not in violation of any agreement between plaintiffs and defendants. The balance of said answer consists wholly of specific denials of the other allegations of the petition, and the prayer of the answer is only that defendants may go hence without day.

"Plaintiff's reply denies each and every allegation in said answer contained.

"The cause was tried at the November term, 1886.

"The court found that there was no sufficient contract upon which equity would compel specific performance, but under assurance to plaintiffs by defendant that she would let them have the land, and on the faith thereof, plaintiffs put on the land improvements of the value of $1,100, and that plaintiffs have received rents and profits therefrom to the amount of $400, leaving a balance on the land for said improvements of $700, which the court finds is an equitable lien on the land described in the petition, which defendant shall pay, as doing equity before getting affirmative action of the court to do her equity, and upon doing which the title to the land will be perfected in her and a writ of possession awarded to put her in possession of said land. Upon default of her paying said $700 and interest from this date, within 90 days from this date, plaintiffs shall remain in possession of said land until said amount and interest shall have been paid by the rents and profits thereof and that each party pay one-half of the costs herein. Decree was entered in pursuance of said findings, and plaintiffs appealed."

The evidence in the case, as presented to this court by the bill of exceptions, is not as clear in all respects as might

be desired.    But from its careful examination the follow-
ing facts may be gathered as sufficiently proved.    The
plaintiffs and female defendant are brothers and sisters,
the latter much older than the former.    Some time prior
to the year 1879, the parties, as well as their father, Ralph
Dawson, and their mother, resided in the city of Brook-
lyn, New York, at which place and the city of New York
the said Ralph Dawson was the owner of a large amount of
valuable and productive real property.    He was at the same
time largely indebted, and probably otherwise involved.
This property in New York and Brooklyn, the said Ralph
Dawson conveyed to and placed in the possession of the
defendant, Eleanor J., his daughter, as he expressed it when
on the stand as a witness for her, "to pay my debts, for
fear of the foreclosure of. mortgages, and to try and get
them put off a little while until she could try and sell them
and pay off." He also adds in the same sentence, "and
she sold by degrees and paid off." It was during the ex-
istence of this trust that the defendant, Eleanor J., bought
the land in question and placed the plaintiffs, or some of
them, in possession of it.   It was probably the theory upon
which this action was commenced that the lands having
been bought with this trust fund for the younger children
of Ralph Dawson, the real owner of the fund, although
the title was taken in the name of Eleanor J., a trust therein
would result in favor of said younger children, which a
court of equity would enforce.    The evidence no doubt
would sustain that theory, were the father and owner of
the trust fund deceased without disposing thereof by will
or otherwise, but in the absence of that circumstance there
is a want of evidence of either legal or equitable title to
the trust fund in the plaintiffs sufficient for the enforce-
ment of the claim of the plaintiffs as a trust.  But the evidence
does prove that while the defendant, Eleanor J., was in pos-
session of the said fund, and claiming the right to dispose of
it as she pleased, she bought the land in question and made
a gift of it to the plaintiffs.

Whether she paid for it out of the trust fund or other-
wise, is not clearly proved, nor is it material to the present
view of the case.   In acceptance of the said gift, and not
discriminating very closely or caring much whether it
came from the funds of their father or means acquired
from other sources by their sister, the two male plaintiffs
entered into the possession of the land and made valuable
permanent improvements thereon, claimed by them on oath
to be of the value of fifteen hundred dollars, and found by
the court below to be of the value of eleven hundred dol-
lars.

    The land in question was owned by a foreign insurance
company.   The agent who sold the same to defendant tes-
tified that while they were agreeing upon the terms of the
sale, she said that she was "buying it for Willie," or "for
the boys."   George Dawson, one of the plaintiffs, testified
that soon after the purchase of the land by his sister she
said to him, "I bought this quarter for you to go to work
on, and work and take care of it, and improve it, and
when you get of age I will give the deed of this quarter,"
and again, "she says go on and improve that land and take
care of it," etc.   William J. Dawson, one of the plaintiffs,
testified that when defendant came from the office after
purchasing the land, she said "she had bought a farm for
me and we were to live together agreeably until such time
as my brother came of age, and that when he came of age
she would make a division, and give George and Fannie
the upper quarter and me the lower quarter," and again,
"we were to go on there and work it till such time as
George came of age * *. * we were to go on improving
it, and the proceeds we were to have for spending money,
and when it came such time as we came of age, she would
give us a deed, and if it did not suit us, we were to sell
out both farms and come to town to live, the same as we
did in New York."   Four letters of defendant to William
J., the elder of the plaintiffs, dated respectively May 18th,

1880, February 20th, 1882, February 22d, and January 29th, were placed in evidence.   They fairly corroborate the testimony of the plaintiffs, and clearly recognize the land in question as the land of the plaintiffs.   These letters she utterly failed to explain, when on the stand as a witness in her own behalf, although her attention was directed thereto.

Ellis Parrish, William Snyder, and Mrs. Margaret Snyder, disinterested witnesses residing in the neighborhood of the premises, testified to conversations with defendant, Eleanor J., about the time of the purchase of the land, in which she stated that the land was bought for the boys, meaning the plaintiffs.

On the other hand, the defendant, Eleanor J., testified to a general denial of having contracted or given the land to plaintiffs.   Ralph Dawson testified that plaintiffs had no interest in the fund placed by him in the hands of his daughter, the defendant.

The evidence in the case, therefore, I think, overwhelmingly proves that the defendant, in whom the legal title to the land is vested, when she purchased it, or soon thereafter, made a gift of it to the plaintiffs, on condition that they would go on and occupy and improve the land, and promised that as soon as the younger of them arrived of age, she would deed the land to them.   Of the fact that they took possession of the land at that time, pursuant to and relying upon said gift and promise to convey the same by defendant, and retained it ever since, and have made the improvements thereon hereinbefore referred to, there is no dispute.

As to the cases in which courts of equity will enforce the specific performance of parol gifts of real property, there are doubtless a great conflict of the authorities.   I am inclined, however, in the midst of this conflict, to follow the rule laid down by the supreme court of the United States in the case of *Neale v. Neale*, 9 Wall., 1, in the fol-

lowing language: "And equity protects a parol gift of land equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property." The court adds: "And this is particularly true where the donor stipulates that the expenditure shall be made, and by doing this makes it the consideration or condition of the gift."

In the case of *Guynn v. McCauley*, 32 Ark., 97, the court thus states the law (I quote from the syllabus): "Chancery will not decree specific performance of a mere voluntary agreement. But when a donee enters into possession and makes improvements on the land, the money thus expended on the faith of the gift is a consideration on which to ground a claim for specific performance."

Pomeroy in his work on Contracts, after stating the law to be that, "The making of valuable improvements by a donee in possession is regarded by courts of equity as furnishing a sufficient ground for decreeing a specific execution of a parol gift of land," etc., says: "Slight and temporary improvements, or trivial outlays, however, do not raise an equity in favor of the donee to have the gift enforced, nor does the court grant its specific remedy when the expenditure was not made in consequence of the gift; nor, it seems, when the donee has been compensated for his outlays by the rents and profits already received from the land. The gift must be established by certain and unmistakable evidence, and the fact that the improvements were made in consequence of, and in reliance upon it, must be directly and unequivocally proved." See pp. 184-5, and 6, and cases cited. With the above qualifications and exceptions, it seems to be the doctrine of all the text-books, and most of the leading cases, that a donee in possession, and who has made valuable improvements upon the land, will receive the same protection as a purchaser for a valuable consideration where there has been a part performance of the contract.

In the case of *Jones v. Tyler*, 6 Mich., 363, it was held that, "In such a case a conveyance would be decreed only on the most satisfactory proof of the gift, and of some satisfactory reason why it was not consummated by a conveyance." In the case at bar, the reason given why the gift was not consummated by a conveyance is, that the donees were infants. While this was probably not a sufficient reason, it is evident from the bill of exceptions that it was so considered by the donor, and that such consideration controlled her action.

The judgment of the district court is reversed, and a decree of specific performance will be entered in this court requiring the defendants to convey the land described in the pleadings to the plaintiffs, and that upon their failure to make and deliver such conveyance for the term of ninety days from the filing of this opinion, the said decree to stand as a conveyance thereof.

DECREE ACCORDINGLY.

THE other judges concur.