CLARA HITCHENS ET AL., APPELLEES, V. MABEL ALDERSON
ET AL., APPELLANTS.

FILED SEPTEMBER 20, 1935.   No. 29283.

*Jackson & Rice* and *Kelsey & Kelsey,* for appellants.

(573)

*Mapes & Mapes* and *Fred H. Free, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

ROSE, J.

This is a suit in equity to foreclose a mortgage on a quarter-section of land in Pierce county. The mortgage purports to secure a note for $17,576. Both instruments were dated May 26, 1927, and were payable May 26, 1932. Mike Hitchens, a bachelor, was payee and mortgagee. He died intestate May 4, 1928, leaving as his sole heirs at law 16 nephews and nieces. Morton Taylor was administrator of decedent's estate and made his final report April 30, 1929, which was approved by the county court May 24, 1929. Among the unadministered assets were the note and mortgage in suit, which the administrator had assigned to the 16 heirs. Thirteen of them are plaintiffs herein and two of them, Mabel Alderson and Nellie Alderson, sisters, unmarried, are defendants, they having inherited the property interests of their deceased brother, Roy Alderson, who died August 7, 1928. The note and the mortgage were signed by the brother and his two sisters in this order: Roy Alderson, Mabel Alderson, Nellie Alderson. The mortgage was recorded in the public records of Pierce county May 27, 1927.

The answer contains a general demurrer, a general denial, and an affirmative defense which may be summarized as follows: Hitchens, the bachelor uncle, made his home with his unmarried nephew, Roy Alderson, and the latter's two sisters, the defendants. They inherited their land which had been heavily mortgaged and they were in danger of losing their farm and the home of the four of them. The uncle paid the previous indebtedness and took the note and mortgage in suit to save the farm and the home of all from the improvidence of Roy and to prevent him and defendants from again encumbering the land. The instruments were signed for that purpose, the uncle stating they would not create a liability for the payment

of any debt nor create a lien on the land, the papers being a sham without any purpose to make them binding obligations. The papers were signed with this understanding and were never acknowledged or delivered. The defenses thus outlined were pleaded in detail by defendants.

The reply to the answer contained a general denial and pleas that the note and mortgage were inventoried in the Hitchens' estate and included in the county court's order of distribution, from which there was no appeal; that defendants participated in the distribution; that defendants were estopped by their own writings and conduct to assail the mortgage or the acknowledgment or the delivery.

Defendants summarize the issues on the merits of the cause as follows:

"1. Were the note and mortgage made, executed and delivered by the defendants to Hitchens?

"2. Were the note and mortgage what they purported to be or merely shams?"

The district court found the indebtedness due to the heirs from defendants on the note and mortgage to be $18,183.80 and ordered foreclosure. Defendants appealed.

Defendants assail the petition as fatally defective, because it does not contain allegations that there had been no proceeding at law to collect the debt, and that the debt had not been paid—statutory requirement. Comp. St. 1929, sec. 20-2144. Though these pleas were never in fact inserted in the petition to foreclose the mortgage, the point is not well taken on the record presented, for the following reasons: During the progress of the trial, plaintiffs presented in open court a motion to insert in their petition the omitted allegations. Permission was granted from the bench. Defendants were permitted to answer and were given time to do so. Plaintiffs stated that, by leave of court, they amended their petition by adding the omitted allegations, reciting what they were. The trial court allowed the amendment and defendant filed an amended answer. Afterward the petition was treated by the trial court as amended. The issues raised by the amendment

and the answer were tried. The cause of action was not changed. Plaintiffs proved by uncontradicted evidence the new matter pleaded—no action at law to recover the debt and nonpayment of the debt. Defendants understood the issues and were not prejudiced by the failure to insert in the petition itself the amendment made in open court and read into the record. According to well-established rules, defendants are not entitled to a reversal on this ground.

Defendants argue further that the delivery essential to the validity of the note and mortgage as binding obligations of defendants was not proved. Where direct evidence is not available, delivery may be shown by circumstances. Defendants and their brother, Roy, signed the note and the mortgage in controversy. Following the mortgage there is the certificate of a notary public in regular form that each of the signers, all single, appeared before him personally and severally acknowledged the execution of it to be their voluntary act and deed. The seal of the notary is impressed on his certificate. The mortgage on its face imports a *bona fide* transaction. It was recorded in the public records of Pierce county the day after it was signed. Considered what it purports to be, a genuine instrument, mortgagee was a person interested in having it delivered and recorded. Mortgagors inherited the land when it was heavily encumbered. Later, mortgagee paid the former mortgage and the new lien followed the old. The present mortgage was inventoried as an asset of the Hitchens' estate and was so treated in the settlement thereof. It was included as part of that estate in estimating inheritance taxes. Defendants did not challenge in the county court the power of the administrator or of the county judge to treat the mortgage as an asset of decedent's estate nor question their rightful possession of it in a representative or judicial capacity. There were two other mortgages, each for $4,500, on different tracts of land, in which defendants were named mortgagors and Hitchens mortgagee. One of them was paid by defendants and the proceeds distributed among the heirs. The other was ordered

foreclosed in the present suit and from the judgment for that particular debt there was no appeal.

Defendants and their brother, Roy, parted with possession of the note and mortgage for $17,576 after signing them. There was no writing by Hitchens that those instruments were intended as shams. He was capable in business affairs and left an estate exceeding in value $150,000, but he did not leave a will or other written instrument releasing defendants from liability on the instruments which they signed. The administrator testified the note and mortgage in controversy came into his possession after he was appointed as such and that he first saw them in Hitchens' safety deposit box in the First National Bank of Plainview.

The facts outlined are shown by direct evidence or by proper inference from the record as a whole. The conclusion is that plaintiffs made a *prima facie* case on the issue of delivery.

An elaborate argument was directed to the proposition that the trial court erred in ruling that defendants were not competent witnesses to testify on the issues of signatures, acknowledgment, delivery and intent. Their competency as witnesses was challenged under the statute providing:

"No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness." Comp. St. 1929, sec. 20-1202.

The mortgagee is a deceased person. Plaintiffs are entitled to a share of his estate and are his legal representatives. Defendants have a direct legal interest in the result of the action. The execution of the mortgage was a "transaction" within the meaning of the statute. That word in the sense used by the lawmakers "embraces every variety of affairs, the subject of negotiations, actions, or contracts between the parties." *Wilson v. Wilson,* 83 Neb.

562. Plaintiffs did nothing to waive the statutory disqualifications. It is clear, therefore, that both Mabel Alderson and Nellie Alderson, defendants, who signed the note and mortgage in controversy, were disqualified as witnesses to testify to transactions and conversations between themselves and the deceased person. In a former opinion it was said:

"Having in view the common-law rule as to competency, and the mischief which this statute sought to prevent, it should be construed as if it read that no person having a direct legal interest in the result of an action shall be permitted to testify, when the party interested adversely to the witness' interest is the representative of a deceased person." *Wylie v. Charlton,* 43 Neb. 840, 853.

It is also insisted the trial court erred in sustaining objections to offered proof of conversations supporting the affirmative defense of sham paper. Nellie Alderson, defendant, was asked on the witness-stand to testify that, without herself participating, she heard conversations and understandings between Hitchens and her sister, the other defendant, to the effect that the note and mortgage did not represent a debt of defendants, nor create a lien on their land, but were intended as shams to prevent further credit and encumbrances as pleaded in the answer. Questions and offers of proof in different forms called for the conversations and understandings thus implied, but were excluded, counsel for defendants insisting that the witness was a third person and was therefore qualified as a witness to answer such questions. The witness Nellie Alderson was not a third person permitted to so testify. She had signed the papers and was named therein as a debtor. She was one of two defendants whose interests in the litigation were adverse to the interests of plaintiffs, representatives of the deceased person who was the creditor in the transactions. Defendants were both disqualified by statute to testify directly to the conversations with Hitchens. To permit one of them to repeat what would amount to the testimony of the other by means of an over-

heard conversation would circumvent an obvious purpose of the law. The rulings below on this phase of the defense were proper. The findings of fact upon the trial *de novo* are the same as those of the district court. Error prejudicial to defendants has not been pointed out or found.

AFFIRMED.