## ISAAC HUGUS *v.* BENJAMIN WALKER.

1. The declarations of a father that certain land was his, who had drawn and attested a lease of that land by a son, which son was in possession at the time, and had made improvements, are admissible in evidence to repel the assertion of title by parol gift, &c., &c., in that son.

2. Declarations of the father that the land was his, and admissions of the son to the same effect, made after the son became involved, are admissible in such a case.

3. Where a son goes into possession of his father's land, and makes improvements, a jury is not to infer from that, in the absence of other evidence, that the father gave him the land.

4. Loose declarations of the father, in casual conversations, calling it his son's property, without any explanation how it came to be his, are not sufficient evidence of a gift; and still less of such a parol sale as equity would decree specific performance of.

ERROR to the Common Pleas of Somerset.

This was an action of ejectment by Isaac Hugus against Benjamin Walker, brought for the use of such of the creditors of William G. Walker, deceased, as were concerned in the purchase of the said William's interest in the premises from A. H. Philson, his administrator. William G. W. and the defendant were sons of George Walker, deceased.

It appeared from the evidence of the plaintiff that the premises were owned in fee by George Walker, who, some years before the death of his son William, put him in possession of the same. William never received a deed for the property, but his father, on several occasions, treated it as though it were his son's. Once, after having had a survey made, he said he could now go on and make the boys their deeds. At another time, being asked what he would take for certain wood on the land, he said he would have nothing to do with it, it was William's, or William's land. William demised the land to a tenant for three years, his father drawing and witnessing the lease. The tenant paid taxes for one year to George Walker, apparently as collector. The land was assessed to William from the time of taking possession to his death; and was once so assessed by his father, acting as assessor. William made improvements of considerable value, and paid the taxes.

The defendant's evidence showed that William, being applied to for leave to erect a turnpike gate on the land, said he had nothing to do with it, and referred to his father, who gave the necessary directions. That, at another time, William said to his father he

P 2

must sell his place; he could not get through; when his father asked, Where have you a place? to which William rejoined, Did you not give the rest of the children a place? To this the father answered, "No; I never gave one of them; if you have a place sell it, but don't sell mine." After William went away, his father said he would never give him a title to that place, but that if he did well, he would give him another place. On several occasions William made admissions inconsistent with an assertion of ownership in himself. To the admission of the evidence, mentioned in the first sentence above, the plaintiff excepted. The defendant further proved that George Walker paid large sums towards the improvements made upon the land.

The plaintiff requested the Court to charge the jury, that if the jury believe that the creditors of William G. Walker trusted him on the faith of his being the owner of the land in question, then neither George Walker nor his heirs can be permitted to deny in this action that the fact was so, because, in making such denial, they would be committing a fraud against the creditors.

The Court below (BLACK, President) charged the jury as follows:—

"It is admitted that the legal title to this land was in George Walker, the father of the defendant, who is in possession of it as one of his heirs. The plaintiff claims it under William G. Walker, another son of George Walker, who died before his father, and to whom it is alleged that George Walker made a parol sale or gift of it.

"Where a man makes a parol sale and receives the purchase-money, he cannot set up the statute of frauds against the validity of the contract. So, where he makes a gift by parol, either to his son or to a stranger, if the donee has gone into possession in pursuance of the gift, and made valuable improvements on it, the land so given cannot be claimed back again, and the possession resumed by the donor. But where facts like these are relied upon to take the case out of the statute of frauds, they ought to be clearly and satisfactorily proved.

"In the present case, there is no direct evidence of any gift by George Walker to his son William. The plaintiff relies upon circumstances and upon certain declarations of George Walker. These may be briefly summed up as follows:—1. He allowed William to go into possession, and in conversation called it William's, once or oftener. 2. After William moved to Berlin, he was still permitted

to rent it. 3. When Bare asked the old man for privilege to take some wood off the farm, he referred him to William. 4. He said that he would give William the Long place instead of this one. 5. He said that he would exchange farms with William if he did well in the store. 6. He spoke about having been over to William's when the barn was building, to show William how to do. 7. George Walker was the collector of taxes, and received taxes from William for the land.

" Where a son goes into possession of his father's land, and makes improvements, a jury is not to infer from that, in the absence of other evidence, that the father gave him the land. Neither are loose declarations of the father to his neighbours, in casual conversations, calling it his son's property, without any explanation how it came to be his, sufficient evidence of a gift. Still less are such things evidence of such a parol sale as a chancellor would decree the specific performance of.

" All the facts produced by the plaintiff, and which I have called your attention to, are more than answered by the defendant's proof of declarations made by William. When asked by a witness for leave to put a toll-gate on the land, William said he had nothing to do with the land, he should go to his father; and the father upon being applied to did point out the spot where it should be built. William said, when the land was assessed to him, that he would pay the taxes, because he thought the rent was worth as much as the taxes, and that if the land was his, he would not take what it was valued at for it. On two different occasions, he told John Watt what amounted to a declaration that he had no title. Peter Walker's testimony is still more important; for he proves a conversation between the parties themselves, in which the father roundly denied that he had given his son the farm, and the son did not assert that there had been either sale or gift in the case.

" If you are satisfied, by the evidence, as you have heard it from the witnesses, and from the law, as we have laid it down to you, that there was a parol gift of the land in dispute, made by George Walker to his son William, and that William, in pursuance of that gift, went into possession and expended his labour and money in making valuable improvements on it, you may find a verdict in favour of the plaintiff. But it is our duty to say at the same time, that the evidence has made no such impression on the minds of the Court. On the contrary, we think that no claim to land, under a parol gift from a father to his son, has ever been enforced by judi-

cial authority in this State, where the proof was not stronger than it is here. Nevertheless, we leave it to you to determine it, according to your judgment.

"The plaintiff's counsel has submitted to us one point of law. We answer that if any person had gone to George Walker, and told him that he intended to trust William, on the faith that he, William, was the owner of this land, and if George Walker had answered that William was the owner of it, and the other party, believing it, had given him credit, George Walker could never have denied, as against that creditor, that ·the fact was as he said. But if the creditors of William took up a false notion that George Walker's land was William's, and trusted William on that mere notion of their own, this created no legal, equitable, or moral obligation on George Walker to pay their debts, or to convey this farm for the use of William's creditors. There is no evidence that any creditor trusted William because he believed him to be the owner of the land. No creditor talked to George Walker about it. There is no reason to doubt that if any person interested had asked him the question, he would have told him frankly the whole truth."

The verdict. was for the defendant. The errors assigned here were the following :

1. The Court erred in admitting evidence of the declarations of George Walker, that the land was his, because he and those claiming under him were estopped by the lease made between William G. Walker and John Sutter, written and attested by the said George Walker, from claiming the land in dispute.

2. In admitting evidence of the declarations of George Walker, made after William G. Walker became involved, that the land was his, because the effect of such declarations is to defeat the just claims of the creditors of William G. Walker.

3. In admitting evidence of the declarations of William G. Walker, made after he became involved, that the land was not his, because the effect of such declarations is only to defeat the just claims of his creditors.

4. In not referring to and commenting upon the whole of the evidence given by the plaintiff, particularly after referring to and commenting upon a portion of it.

5. In assuming that "after William removed to Berlin he was still permitted by his father to rent" the farm.

6. In not giving a direct answer to the point submitted by the plaintiff.

7. In saying that "all the facts produced by the plaintiff, and which I have called your attention to, are more than answered by the defendant's proof of declarations made by William."

*Gaither* for the plaintiff in error.

1. 1 Greenleaf's Ev. § 22. 3. 2 Halstead's R. 173; Dew *v.* Mountjoy. 4. Neiman *v.* Ward, 1 W. & S. 82. 6. Smith *v.* Thompson, 2 S. & R. 49; Power *v.* McFarran, 2 S. & R. 44; Slaymaker *v.* St. John, 5 Watts, 27. 7. The Court did not call the attention of the jury to all the facts, and assumed the province of the jury in passing upon them.

*Coxe* and *Forward*, contrà.

There is no proof here of gift or sale; the attempt is to infer one from facts after the possession taken: Eckert *v.* Eckert, 3 Pa. Rep. 332; Wood *v.* Fanner, 10 W. 195. The son had the use of the farm, which was doubtless an equivalent for all his improvements; but the father also made some, inconsistent with the idea of a gift or grant.

There was no evidence of William G. W.'s becoming involved at any particular time, nor was he thought or known to be so until after his death. The evidence referred to in the first and second assignments of error was not excepted to.

The doctrine of estoppel could not apply to the father, from drawing and witnessing a lease, in a case like this. The son leased his own stock and farming utensils with the land.

This was a question of parol gift or sale, and it was therefore proper for the Court to give its opinion to the jury upon the weight of the evidence, or upon any one or all of the facts: Woods *v.* Farmer, 10 Watts, 204.

The opinion of this Court was delivered by

COULTER, J.—The three first errors assigned, which relate to the admission of evidence, cannot be sustained. The defendant was not estopped from giving the evidence objected to, merely because the evidence given by the plaintiff impugned, or might weaken it. If that were the case, the determination of causes would be drawn within the vortex of the Court, and when evidence was offered by one, the other party would produce stronger evidence, as he alleged, to show that it ought not to be admitted. All the reasons offered by the plaintiff against the reception of the evidence would go merely to the value of the evidence, when opposed by that

of the plaintiff before the jury. The evidence was in itself competent, pertinent, and relative, and was all properly received. Its weight or value before the jury was another affair. Its effect might be weakened or impaired by the testimony previously or subsequently given by the plaintiff. That was all a matter for the jury under the direction of the Court.

As to the errors assigned in relation to the charge of the Court to the jury: There is nothing in them sufficient to disturb it. I will let the charge speak for itself. It will carry itself through. The judgment is affirmed, for the reasons given by the Court below.

Judgment affirmed.