JAMES W. WYLIE, APPELLANT, v. WILLIAM CHARLTON ET AL., APPELLEES,

AND

EMMA WYLIE, APPELLEE, v. WILLIAM CHARLTON ET AL., APPELLANTS.

FILED FEBRUARY 6, 1895. NOS. 5767, 5790.

1. **Parol Gifts of Land:** EQUITY. Equity protects a parol gift of land equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property. (*Dawson v. McFaddin*, 22 Neb., 131.)

2. ——— : EVIDENCE. To establish such a case it is not necessary that the proof should be beyond a doubt. A preponderance of the evidence is all that is required in any civil action.

3. ——— : ———. The circumstances which tend to cast suspicion upon such claims are circumstances to be considered in weighing the evidence to determine on which side the preponderance lies, but they do not create any rule of law as to the degree of proof.

4. **Witnesses:** HUSBAND AND WIFE. Under section 329 of the Code of Civil Procedure a wife cannot testify (subject to the exceptions of that section) on behalf of her husband, the plaintiff in an action to establish his title to land, as to conversations with persons since deceased whose representatives are the adverse party to the action. The inchoate estate of dower which

would accrue to the wife, should the husband succeed in the action, constitutes a direct legal interest in its event.

5. —— : ——. The wife in this case was also one of the heirs of the deceased and a defendant in the action. *Held*, That her interest as such heir, not being an interest adverse to the representatives of the deceased, would not of itself be sufficient to exclude her testimony when offered against the representatives.

6. ——. Where a witness is interested on both sides of the record and the interests are of a different character, the court will not undertake to weigh such conflicting interests one against the other and admit the testimony of the witness, because by such weighing of such interests that in favor of the representatives may seem to be greater than that against them.

APPEAL from the district court of Buffalo county. Heard below before HOLCOMB, J.

The opinion contains a statement of the cases.

*Calkins & Pratt*, for appellants:

Equity protects a parol gift of land, if accompanied by possession, where the donee, induced by the promise to give it, has made valuable improvements. (*Dawson v. McFaddin*, 22 Neb., 131; *Ford v. Steele*, 31 Neb., 521; *Brown v. Sutton*, 129 U. S., 238.)

Reasonable certainty is all that is required in proving a parol gift. (*Neale v. Neales*, 9 Wall. [U. S.], 1.)

The plaintiff, James W. Wylie, established the making of such a contract with a part performance that he was entitled to a decree for specific performance under the evidence admitted by the trial court. (*Brown v. Sutton*, 129 U. S., 238; *Mudgett v. Clay*, 31 Pac. Rep. [Wash.] 424; *Russell v. Russell*, 53 N. W. Rep. [Mich.], 920; *Haines v. Spanogle*, 17 Neb., 637.)

The court erred in refusing to allow Emma Wylie to testify as a witness for plaintiff James W. Wylie. (*Gillette v. Morrison*, 9 Neb., 401; *Kingsbury v. Buckner*, 10 Sup. Ct. Rep., 650; *Griffin v. Earle*, 13 S. E. Rep. [S. Car.], 473.)

*Dryden & Main* and *Ricketts & Wilson, contra:*

A court of equity will not compel donor's personal representatives to complete an imperfect gift by the doing of an act which the donor, if living, might have refused to do. ( *Walsh's Appeal*, 122 Pa. St., 177.)

To establish a parol gift or sale of land between parent and child the evidence must be direct, positive, express, and unambiguous. The terms of the sale or gift must be clearly defined and all the acts necessary to its validity must have special reference to it, and to nothing else. ( *Collins v. Lofftus*, 34 Am. Dec. [Va.], 719; *Erie & W. V. R. Co. v. Knowles,* 11 Atl. Rep. [Pa.], 250; *Allison v. Burns*, 107 Pa. St., 50; *Poorman v. Kilgore*, 67 Am. Dec. [Pa.], 425.)

A parol gift or sale of real estate cannot be specifically enforced unless possession of the property was taken after and in pursuance of such gift or sale. ( *Poorman v. Kilgore*, 67 Am. Dec. [Pa.], 425; *Cox v. Cox*, 67 Am. Dec. [Pa.], 432; *Green v. Groves*, 10 N. E. Rep. [Ind.], 401; *Birkbeck v. Kelly*, 9 Atl. Rep. [Pa.], 313.)

As to the incompetency of Mrs. Wylie to testify as a witness the following cases are cited: *Wamsley v. Crook*, 3 Neb., 344; *Ivers v. Ivers*, 47 N. W. Rep. [Ia.], 149; *Richards v. Crocker,* 20 N. Y. Sup., 954; *Mills v. Davis*, 21 N. E. Rep. [N. Y.], 68; *Donnell v. Braden*, 30 N. W. Rep. [Ia.], 777; *Erwin v. Erwin*, 7 N. Y. Sup., 365; *Hoffman v. Hoffman*, 18 N. Y. Sup., 387.

IRVINE, C.

These two cases are based on separate records, but they present the same state of facts and were apparently tried together, under a stipulation which provides that the evidence taken in one shall be considered in the other, with the exception of the evidence of James W. Wylie. They are founded on the same contract and, while presenting some

points of difference, are in so far identical that one opin-
ion treating both cases will economize space and, perhaps,
best present the questions involved.   One case was begun by
James W. Wylie, and the other by Emma Wylie, his wife;
that by James Wylie made defendants the heirs and ad-
ministrators of Ann Charlton, deceased.   The defendants
in Emma Wylie's case were the same, except that she
herself was a defendant in James Wylie's case.   Each pe-
tition alleged that in January, 1886, Ann Charlton, a
widow, was the owner in fee-simple of the northwest
quarter of section 8, town 11, range 18 west, and the
equitable owner, by virtue of a contract of sale from the
Union Pacific railway, of the east one-half of the north-
east quarter of section 7.   It will be observed that the
eighty acres last described adjoin the quarter section first
described, and lie immediately west thereof.   The petitions
further allege that on January 20, 1886, James Wylie
married Emma, the daughter of Ann Charlton, whereupon
Ann Charlton agreed with Wylie and wife that if they
would remove to Buffalo county, live upon, improve, and
cultivate said lands, Ann Charlton would give to her
daughter Emma the eighty-acre tract in fee-simple, free
from all incumbrances, and would sell to James Wylie the
quarter section for the sum of $2,000, to be paid when
James should have sufficiently stocked said land, and that
meanwhile James should pay to Ann Charlton such rent
as might be agreed upon in lieu of interest on the $2,000;
that this proposition was accepted and that Wylie and
wife moved upon said land, and have ever since resided
thereon; that they have improved and cultivated the same
and performed all the conditions of the contract on their
part; that in October, 1889, it was agreed between Wylie
and Mrs. Charlton that the purchase money for the quar-
ter section should be paid and the conveyance made in the
fall of 1890; that on June 6, 1890, Ann Charlton died
intestate, leaving as her heirs William Charlton, her son,

Ella Charlton, Elizabeth Stevens, and Emma Wylie, her daughters, and William Charlton, second, her grandson, and that William Charlton was her administrator. The prayer in each petition was for a specific performance of the contract. The answers admitted the relationship of the parties, the death of Ann Charlton and the ownership by her of the land described, and denied all other allegations of the petitions. In James Wylie's case the court found for the defendants and dismissed the case. In Emma Wylie's case the court found for the plaintiff and decreed specific performance as to the eighty acres. As we have said, the evidence was the same for the most part in both cases. The difference was this, that in Emma Wylie's case the court permitted James Wylie, her husband, to testify as to the conversation with the deceased which constituted the parol contract which it was sought to enforce. In James Wylie's case the court excluded the testimony of Mrs. Wylie as to the same facts. Neither party attempted to testify in his own behalf as to such conversations. The result was in Emma Wylie's case there was direct evidence from her husband as to the contract; in James Wylie's case there was no direct evidence. From the decrees so rendered appeals have been taken; in Emma Wylie's case by the defendants, in James Wylie's by the plaintiff.

In the case of Mrs. Wylie the ground of the appeal is that the decree is not sustained by the evidence. It is not urged that the court erred in admitting the husband's testimony. One point relied upon is that the contract proved did not, with sufficient certainty, describe the land. It is true that Wylie's testimony is simply to the effect that Mrs. Charlton agreed to convey to her daughter "one of the eighties." This would be uncertain standing alone, but there is evidence that when the plaintiffs moved upon the land they occupied a sod house standing on the quarter section, and that Wylie thereafter erected a barn across the section line road on the eighty-acre tract claimed by Mrs.

Wylie; that while this barn was being erected Mrs. Charlton was present and a discussion arose as to where it should be placed, Mrs. Charlton expressing an intention of erecting a house for her daughter on the eighty-acre tract and thinking for that reason the barn should be placed on the quarter section.   To this the Wylies responded that in case they should desire to sell either tract it would be better that both house and barn should be on the same tract.   Mrs. Charlton assented to this and the barn was for that reason placed on the eighty acres.   There is some other evidence tending to show a recognition by Mrs. Charlton of the eighty-acre tract claimed as that which was to be conveyed to her daughter.   We think that this evidence was sufficient to identify the tract and to sustain the finding of the trial court in that particular.   In addition to this point the defendants contend that equity will not interfere to complete an imperfect gift.   Of the cases cited in support of that point *Walsh's Appeal*, 122 Pa. St., 177, is a fair illustration.   That was a case in which it was sought to enforce a *donatio mortis causa*.   The gift failed because of a want of the appropriate elements to support such a gift. The contract alleged would present no such case.   It presents a case of a parol gift of land, followed by possession and making of improvements.   That such a gift will be sustained and enforced in equity is no longer an open question in this state.   (*Dawson v. McFaddin*, 22 Neb., 131; *Ford v. Steele*, 31 Neb., 521.   See, too, *Neale v. Neales*, 9 Wall. [U. S.], 1; *Brown v. Sutton*, 129 U. S., 238.)   It is still further urged that the proof in this case lacks the requisite degree of certainty, and in support of that contention counsel call attention to the rule announced in many cases, of which *Allison v. Burns*, 107 Pa. St., 50, is an extreme example, to the effect that in order to sustain a parol gift of land it must be established by credible proof of such weight and directness as to make out the facts beyond a doubt; that posses-

sion must have been taken and maintained and improvements made on the faith of the promise to convey, and that compensation in damages would be inadequate. We do not question that this rule, somewhat qualified, is a safe one to pursue in weighing the evidence. The courts have, perhaps, gone so far in the way of declaring exceptions to the statute of frauds that the efficacy of the statute has been endangered, and care should be taken in such exceptional cases to avoid the mischief which the statute endeavored to prevent; but we cannot accept the rule referred to as a rule of law governing the review of a case. To accept it as such would require in a civil case at least as high a degree of certainty as in a criminal case. As said by NORVAL, J., in *Stevens v. Carson*, 30 Neb., 544, "It has been repeatedly held by this court, in civil cases, that the party holding the affirmative of an issue is only required to establish it by a preponderance of the evidence." To adopt any rule which as a matter of law requires a higher degree of proof in any civil case would conflict with the rule so established. The true rule is stated in *Neale v. Neales*, 9 Wall. [U. S.], 1, which is that the law requires no more than that the case as stated be made out with reasonable certainty. The fact that the gift lies in parol, the fact that a temptation exists to make out a false case, and in such cases as this the fact that the person by whom the parol testimony might be contradicted is dead, are merely facts affecting the weight of the evidence. They are proper for consideration in determining on which side the preponderance of the evidence lies, but they do not require a different rule as to the degree of evidence required. In this case we think the terms of the contract were shown with reasonable, certainty. There is no doubt that the Wylies moved upon the land at the time alleged, that they continued to reside there, that they made lasting and valuable improvements. There was some evidence tending to overcome the proof so made. In the first place the facts

already referred to, which in their nature are calculated to arouse suspicion in all such cases.   In the second place, there is evidence that Wylie habitually, after the first year, divided the crop, giving to Mrs. Charlton one-third thereof.   In the next place, some admissions of Wylie are shown conflicting with his claim of title, and it was shown that he filed a claim against Mrs. Charlton's estate for the expense of the improvements.   But the admissions and acts of Wylie, while competent against him, were not competent as against his wife and should not be considered in her case, and it seems that the district judge did consider them in his case and not in hers.   The evidence in Mrs. Wylie's case, therefore, fairly conflicts.   There was sufficient to support the finding of the district court in her favor and that finding will not be disturbed.

The case of James Wylie presents a different aspect.   It lacked all direct proof of the contract relied upon to sustain it.   The only evidence to sustain the case was proof of possession by the Wylies, and of improvements made on the land.   There was the same evidence as in Mrs. Wylie's case to meet this and, in addition thereto, the evidence as to Wylie's filing a claim against the estate for the improvements, and as to his declarations was competent and entitled to some weight.   The declarations were somewhat ambiguous, and perhaps entitled to little weight, and his act in filing the claim against the estate was by him explained in such a manner that the trial court might have been justified in accepting the explanation and giving little or no force to his act; but there being no evidence in his case to establish the contract, except that afforded by his possession and by the making of improvements, and the evidence of declarations by Mrs. Charlton, and there being, on the part of the defendants, some evidence of declarations contrary to his claim of right, evidence of his making a claim against the estate, inconsistent with that claim of right, and in addition thereto to circumstances presenting at

once the opportunity, and the temptation to now make a
false claim, we think it was for the trial court to determine
whether or not a preponderance of evidence existed in his
favor.   The trial court found the issues against him, and
its finding should not be disturbed, unless the court erred
in excluding the testimony of Mrs. Wylie, which was of-
fered as direct proof of the contract.   Mrs. Wylie's testi-
mony was undoubtedly excluded upon the theory that it
fell within the prohibition of section 329 of the Code of
Civil Procedure, which is as follows: "No person having
a direct legal interest in the result of any civil action or
proceeding, when the adverse party is the representative of
a deceased person, shall be permitted to testify to any trans-
action or conversation had between the deceased person and
the witness, unless the evidence of the deceased person shall
have been taken and read in evidence by the adverse party
in regard to such transaction or conversation, or unless such
representative shall have introduced a witness who shall
have testified in regard to such transaction or conversation,
in which case the person having such direct legal interest
may be examined in regard to the facts testified to by such
deceased person or such witness, but shall not be permitted
to further testify in regard to such transaction or conversa-
tion."

Many years ago it became apparent that the common law
rule rendering incompetent as witnesses all persons inter-
ested in the result of an action was impolitic, and not
adapted to the institutions of modern civilization.   The
injustice done by excluding such witnesses was manifestly
a greater evil than that resulting from admitting their tes-
timony and thus affording a temptation to perjury.   The
legislatures then began to make inroads upon the rule un-
til the broad step was taken which has been embodied in
our Code of Civil Procedure, of enacting that every hu-
man being shall be a competent witness in all cases, except
under certain contingencies expressly provided for. (Code

of Civil Procedure, sec. 328.) In these progressive steps of legislation a great variety of statutes appeared, at first extending the competency of witnesses, and then, in connection with such broad provisions as are found in section 328 of our Code, limiting their competency in certain cases. The legislatures have quite generally recognized the fact that when one party to a transaction has died the other party should not be permitted to testify to such transaction as against the representatives of the deceased; but the methods by which the legislatures have sought to accomplish this are so varied and the decisions under such statutes are so numerous that it is scarcely practicable to review the authorities and induce from them a rule for guidance in the case before us. Especially is this true, because the decisions have turned so much upon the phraseology of the statutes. A reference to a few cases cited in argument will demonstrate this fact.

In Iowa it is held that a party adverse to the representative of a deceased cannot examine a witness as to a conversation with the deceased when such witness is interested on behalf of the representative and adversely to the party calling him. (*Neas v. Neas*, 61 Ia., 641; *Ivers v. Ivers*, 61 Ia., 721; *Donnell v. Braden*, 70 Ia., 551.) But these cases construe a statute which provides: "No party to any action or proceeding, nor any person interested in the event thereof, * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination, deceased, insane, or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person," etc. (Iowa Rev. Stat., sec. 4889.) The language of this statute is quite plain, although it extends the prohibition beyond the reason thereof. So in *Ellis v. Alford*, 64 Miss., 8, a husband and wife joined in a bill to have the wife's conveyance of her separate estate canceled on the

ground of fraud.    It was held that in such a case the testi-
mony of the wife was incompetent, but that of her husband
was competent.    But this was under a statute simply pro-
viding that "no person shall testify as a witness to es-
tablish his own claim to any land for or against the estate
of a deceased person."    The statute excluded only the testi-
mony of one on his own behalf.    So, in like manner, a
comparison of statutes of other states with ours generally
. discloses such a difference in language that their decisions
are not applicable to our law, or, if applicable at all, only to
a limited extent.    It is, therefore, necessary to solve the
question presented without much reference to adjudications
based on other statutes.

It will be observed that Mrs Wylie was interested on
both sides of the record.    If the plaintiff prevailed, she
would become entitled to an inchoate estate of dower as
the plaintiff's husband.    If the defendants prevailed, she
would be entitled apparently to a one-fifth interest in the
land as heir of her mother.    Three questions are in effect
thus presented:  First—Was her interest, as the wife of
the plaintiff, such a direct legal interest as to disqualify
her?    Second—Was her interest, as heir, such as to dis-
qualify her when called to testify adversely to that inter-
est?    Third—Assuming that either or both of such inter-
ests rendered her incompetent, did the fact that she was
interested on both sides remove the disqualification?    In
solving these questions some allusion to the common law
may be useful, if not necessary.    It must be remembered
that at common law any interest in the event rendered a
witness absolutely incompetent and that such interest was
not necessarily a direct or a legal interest.    It was said:
"The true test of the interest of a witness is that he will
either gain or lose by the direct legal operation and effect
of the judgment, or that the record will be legal evidence
for or against him in some other action." (1 Greenleaf, Evi-
dence, sec. 390.)    It was also said that such interest must

be present, certain, and vested; but by examining the cases cited in the admirable discussion of the subject in the text-book cited (Greenleaf, Evidence, secs. 390–430) it will be seen that interests in some cases quite indirect were considered sufficient to exclude the witness.   Our Code seeks, in section 328, to remove all disqualifications, and then by subsequent provisions to establish certain limited disqualifications, and it is not unreasonable to infer that the legisture meant by section 329 to retain in force the common law disqualifications in so far as it fell within the language of the statute.   This is the construction placed by the supreme court of Iowa upon the statute of that state.   That court holds that in determining what interest is sufficient to exclude the testimony the common law tests apply. (*Wormley v. Hamburg*, 40 Ia., 22; *Goddard v. Liffing-well*, 40 Ia., 249.)   Such, too, seems to be implied in this state from the case of *Ransom v. Schmela*, 13 Neb., 73, where it was held that a liability for costs in the action was a direct legal interest which rendered a witness incompetent.   This was one of the interests which rendered a witness incompetent at the common law.   But while it seems clear that the term " interest" was used in our statute in the common law sense, it is equally clear that by restricting the disqualification to those having a direct legal interest in the action the legislature intended to admit the testimony of some persons having interests not direct or not legal which at common law would have excluded them. In this state a woman by marriage becomes entitled to an inchoate estate of dower in all the land whereof the husband is seized of any estate of inheritance during the coverture. (Compiled Statutes, ch. 23, sec. 1.)   This is an interest which, when it once attaches, remains and continues a charge or incumbrance upon the real estate, unless released by the voluntary act of the wife or extinguished by operation of law.   A sale of land under execution upon a judgment against the husband alone will not defeat it.

(*Butler v. Fitzgerald*, 43 Neb., 192.)   While the estate thus acquired is not one in possession, it is such a present vested interest of a legal character, and creates such a direct legal interest in an action to establish title in her husband, as falls within the inhibition of section 329.   The object of this section was to prevent a party testifying against the representatives of a deceased person, where the interest of such party in the result of the action is of such a character as to hold out a temptation to perjury to such an extent as to run counter to the policy of the law.   Surely the acquisition of an estate, even one to take effect *in futuro*, but of such a character as to be recognized at law, and not capable of being defeated by any act of the tenant, presents such an interest.   We are aware that at common law it was held that the interest of an heir apparent did not disqualify him, but no one could be the heir of a living person.   No present interest was recognized in the heir apparent.   His estate might be defeated by the conveyance or will of his ancestor.   The law does recognize an inchoate estate of dower and no act of the husband can defeat such estate. To the first question proposed we therefore answer that Mrs. Wylie, as the wife of the plaintiff, did have such an interest as to bring her testimony within the prohibition of section 329, and that the district court did not err in excluding her testimony as to conversations with Mrs. Charlton. Counsel argue that, aside from this interest, her interest as heir disqualifies her from testifying on behalf of her husband adversely to such interest, and in support of that contention cite the Iowa cases above referred to.   But, as we have pointed out, those cases construed a statute plain in its terms, and by its express terms going beyond the reason which led to its enactment.   It was not for the court, in spite of such direct language, to confine the statute so as merely to meet the mischief which it was sought to prevent. Our statute does not contain such words.   The defendants would have it construed as if it read that no person having

a direct legal interest in the result of an action shall be permitted to testify when the party adverse to the one calling him is a representative of a deceased person. Having in view the common law rule as to competency, and the mischief which this statute sought to prevent, it should be construed as if it read that no person having a direct legal interest in the result of an action shall be permitted to testify, when the party interested adversely to the witness' interest is the representative of a deceased person.

It still remains to be considered whether the fact that Mrs. Wylie was interested on both sides of the record rendered her competent. At common law it was said that if the witness is equally interested on both sides he is competent, but if there is a certain excess of interest on one side he will be incompetent to testify on that side. (1 Greenleaf, Evidence, 391.) An inspection of the cases upon which that statement is based discloses, however, that the courts did not attempt to weigh different interests, one against the other, but admitted the testimony only where the interest was precisely the same. Thus, in *Ilderson v. Atkinson*, 7 T. R. [Eng.], 480, a witness was held competent because, whichever way the action resulted, he was bound to pay the amount involved, according to its event, either to one party or to the other. To the same effect is *Birt v. Kershaw*, 2 East [Eng.], 458. In other cases, a witness was held incompetent because, while there was an equal liability in one way on either side, the success of the party calling him would relieve him from a distinct and additional liability. (*Jones v. Brooks*, 4 Taunt. [Eng.], 464; *Larbalestier v. Clark*, 1 B. & Ad. [Eng.], 899.) Where interests are precisely equal on either side, it may be that the case is out of the reason of the common law, although not out of the letter of our statute; but where there is an interest adverse to the representative of the deceased, we do not think that the courts, without any standard of comparison, should attempt to weigh that interest against an

interest of a different character on the side of such representative, and so undertake to say that the interest on behalf of the representative is greater than that against him, and that an exception to the statute should in that case be made. Where the interest is the same on either side, it may perhaps be said that there is not within the meaning of the statute any interest in the event of the action; but where the interests are different in character, the only safe rule is to follow the statute and exclude the witness' testimony. We think the district court ruled correctly on this point and the result is that both judgments should be

AFFIRMED.