133      351
135      467

133      351
141      717

133      351
f143     726

Peter A. Bevington, Appellant, v. S. G. Bevington, et al, Appellees.

**Parol gift of land:** Evidence. A parol gift of land must be established by clear and unequivocal, but not necessarily undisputed evidence. Evidence reviewed and held sufficient to established a gift where the donee went into possession and made valuable improvements.

**Same:** Consideration. Expenditures in permanent improvements made upon land by the donee in possession, with the knowledge of the donor, constitute a consideration for the gift.

**Same:** Specific performance. Equity has power to require the execution of a deed and completion of a gift of real estate although there is no direct proof of an express promise to make a deed.

*Appeal from Adair District Court.*— Hon. James D. Gamble, Judge.

Thursday, February 14, 1907.

Action in equity to quiet title to land. Cross-bill by defendants asking similar relief. The district court found and confirmed a life estate only in the plaintiff, with remainder over to the defendant. The plaintiff appeals.— *Reversed.*

*Hager & Powell* and *Haddock & Haddock,* for appellant.

*J. J. Crossley & John A. Guiher,* for appellees.

Weaver, C. J.— The plaintiff is a nephew of C. D. Bevington, now deceased, from whom he claims to derive title by gift of the land in controversy. The defendants S. G. Bevington and Mamie Alexander are the only children and heirs at law of said C. D. Bevington, from whom they

claim the title by inheritance. Prior to the year 1883 C. D. Bevington, who was a man of large wealth, became the owner of a tract of one thousand, one hundred and sixty acres of land in Adair county, Iowa. He was a physician residing at Winterset, Iowa, and never made his home on any part of this land. Prior to the date named the plaintiff had for several years been living upon other land owned by Dr. Bevington near Winterset. About the year 1883 or soon thereafter plaintiff with his family moved into the only house then existing on the Adair county tract above mentioned. As the statute renders him incompetent to testify on that subject, the agreement with Dr. Bevington under which plaintiff went into possession is not clearly disclosed in the record. It appears, however, that he continued to make his home at that place and exercised some sort of general supervision over the premises. But a small part of the land was cultivated, most of it being utilized as pasture by Dr. Bevington. About the year 1891 Dr. Bevington sold and conveyed to another, one hundred and sixty acres from the large tract, and in 1897 or 1898 disposed of an additional three hundred and twenty acres. In the latter part of the year 1900 he made conveyance of another three hundred and twenty acres including the part upon which the house and outbuildings were situated, and very soon thereafter still another conveyance of one hundred and sixty acres, leaving remaining of his original holdings at this place two hundred acres of land on which there were no buildings or other improvements save possibly an inclosing fence and some acres under plough. Very soon after the sale and conveyance of the land on which the buildings were situated and before he removed therefrom the plaintiff had an interview with Dr. Bevington, but his testimony with respect thereto being excluded, the agreement, if any, then made or entered into remains unproved except so far as we may draw legitimate inferences from subsequent developments. After this interview plaintiff proceeded to erect a house upon

the two hundred acres remaining unsold as above described, and when the building was completed in the spring of the year 1901 moved his family into it and has since made it his home. The house was of a permanent and substantial character. During all this time he has been in the exclusive occupation and use of the land; he has paid the taxes thereon, and has added thereto improvements of a permanent character of an aggregate value, according to his witnesses, of $2,000. Dr. Bevington died intestate November 13, 1903. During the last years of his life he was somewhat feeble in health, but was not incapacitated for business, and kept personal charge and control of his affairs until very near the date of his decease.

It is the theory and claim of the plaintiff that, after selling off the other tracts of land, Dr. Bevington gave to him the remnant of two hundred acres, and that he accepted the

1. PAROL GIFTS
OF LAND:
evidence.

same by going into possession of the land, putting on buildings and improvements, cutting timber thereon, and otherwise exercising exclusive dominion and control over it, and that the failure of the donor to evidence the gift by a formal written conveyance was a mere matter of forgetfulness or neglect. This claim finds much corroboration in many undisputed circumstances, some of which we have already enumerated, as well as in the testimony of numerous witnesses whose statements are to a greater or less extent denied by the defendants. In addition to matters already stated, it is to be said that, so far as the facts are shown by the record plaintiff paid no rent for the use of this land nor was any rent claimed or demanded by Dr. Bevington. Nor does any such claim or demand appear ever to have been put forward by the defendants herein until after the beginning of this action to quiet plaintiff's title, about two years after the doctor's death. On the contrary, excepting in a single instance of which mention will be made, all of the proved acts and declarations of Dr. Bevington are in harmony with plaintiff's claim as to their true relation with

reference to this property. Among other matters of this character sworn to by the witnesses are the following: About the time plaintiff moved on this tract Dr. Bevington told E. Vandewater that he had "given the land to Pete" and that Pete ought to set out an orchard pretty soon or he would not get any use of it as he (Peter) was getting pretty old. He further said to this witness that he had neglected to make the deed but that he would attend to it. Henry Vandewater, who bought the land on which the old house was situated, says the doctor asked him at the time of that transaction to find him a purchaser for another one hundred and sixty acres and added "that would leave me two hundred acres, and I would give that to Pete." Very soon after this conversation the one hundred and sixty-acre tract was sold and about the same time plaintiff began making improvements on the remainder. Another witness applied to Dr. Bevington to buy the two hundred-acre tract and was told by him "I wouldn't sell that to you, I give that to Pete and haven't anything more to do with it." To another he said (referring evidently to the interview hereinbefore mentioned) that Pete had come down to Winterset and asked him to furnish materials with which to build, but he had answered: "No, you go ahead and build and improve so suit yourself, I intend you shall have it." To another he said: "I give him [Peter] that piece of land up there, and he has got to put on the improvements himself." To a daughter of plaintiff he spoke of the farm as belonging to her father, and said: "I have given it to him, and as soon as the roads get better we will come up and make the deed." To another daughter, after inquiring of her how her father was progressing with the improvements, he said that "Pete has done just what I told him to do, and now I must do my part. I must go right up there and fix up the deed." In 1902 a witness who applied to Dr. Bevington to purchase or rent a site for a blacksmith shop upon this tract

of land was referred by him to plaintiff, saying he " had given it to Pête."

Over against this array of testimony we have to set the fact that no deed was in fact ever delivered, and the further fact to which allusion has been made that, within a few months before his death, a railroad was constructed across the land in question, and on application of the representative of the company Dr. Bevington made a conveyance of the right of way and received and receipted for the agreed consideration for which he did not account to the plaintiff. The agent securing the right of way, who is one of counsel for the defense, swears that, in response to an inquiry by him, plaintiff said that the land was owned by the doctor, but according to plaintiff's version his answer was: " It is mine when Uncle Doc. gives me a deed." The defendant S. G. Bevington makes no claim to any knowledge as to the nature of the agreement or understanding between his father and plaintiff under which the latter made his home upon and improved the 200-acre tract. The other defendant, Mrs. Alexander, who remained longer at home with her father, and was in a somewhat better position to have received some information on the subject, testifies: " I did state to Mrs. Vandewater that I did know that my father had given this land to Peter Bevington for life. I knew he was in possession of it and occupying it, and the way I understood it, and always understood it, neither my brother or I, or any one connected with the estate, had anything to do with it or any rights to it — at least until Peter A. Bevington died." There is considerable evidence, but none without dispute, that for some time after the death of their father both of the principal defendants recognized the validity of plaintiff's claim of title and promised to make him a conveyance thereof.

Such, in a general way, is the case made by plaintiff. The strength of the defense, as we have noted, consists largely in the presumption which attached to the paper

title, the lack of direct and positive evidence concerning the agreement between Dr. Bevington and the plaintiff, and the act of the doctor in making conveyance of the railroad right of way. As the issue to be determined is principally one of fact, we have given the record very careful consideration, and, while either result may leave room for possible doubt as to its correctness, we are quite strongly of the opinion that the clear preponderance of the evidence is in favor of the plaintiff. While the gift is in one sense a large one, yet, in view of the fact of the wealth of the donor, and the fact that he had but two children to share in his large estate, it was not extravagant. It quite clearly appears that he regarded plaintiff, who was a near relative and had served him many years, as having a claim on his assistance, if not his affection, and it is wholly at variance with his apparent generous nature and disposition to suppose that he would have allowed plaintiff to expend his labor and money in building upon and improving this land without some right or title therein other than that of a mere tenant at sufferance. Concerning his conveyance of the railroad right of way it is to be noted that, under the condition of the record title, it was necessary in any event that conveyance should come from him, and to that extent at least his act was not inconsistent with the alleged gift. It was also natural, perhaps, for him to feel that, as the gift had not yet been perfected by deed, and as the subject of the gift was still left to his donee unimpaired (except by the burden of the right of way), he was justified in receiving and retaining the consideration for such conveyance. This explanation is certainly more reasonable than it is to say that a half dozen witnesses have deliberately committed perjury of that Dr. Bevington in his repeated statements concerning his gift of the land to plaintiff was indulging in conscious falsehood. True, many of the circumstances shown on behalf of the plaintiff are not inconsistent with the gift to him of a life estate in the land as decreed by the trial court if that de-

cree has any other support in the evidence. Neither party pleaded or claimed the existence of a life estate, and not until the case was on trial did the defendants appear ever to have suggested its possibility. By their pleadings they denied all right of the plaintiff in the land except as a mere tenant at will and brought an independent action against him to recover rent from the time he went into possession. On the trial no witness testified to anything having any tendency to show the gift of a mere life estate except the statement or concession made by Mrs. Alexander as a witness in behalf of the defendants to which we have already called attention. But even she does not claim or pretend ever to have heard or known of any conversation or agreement between her father and the plaintiff concerning the matter, and her statement that she " always understood " that plaintiff was in possession of the land, and that neither she nor her brother nor any one else connected with the estate " had anything to do with it or any rights to it, at least until Peter A. Bevington died " is a concession of much significance. It involves an admisison that plaintiff was rightfully in possession of the land under a valid agreement with Dr. Bevington, and that the estate thus acquired by him was " at least " for life — the form of expression indicating some degree of doubt in the witness's own mind whether the gift was not of something greater than a life estate. The failure of the defendants to appeal makes the question we are to decide not so much whether there was a gift of any kind as it is whether the gift was of a life estate or of a fee. We confess our entire inability to find in the evidence any ground on which to sustain the decree of the district court establishing the existence of a life estate. This conclusion being reached, the record leaves no alternative but to find that appellant has prevailed upon the fact issues.

On the law of the case appellees contend that, even conceding the truth of all matters testified by the witness for the

plaintiff, it is still insufficient to establish a completed gift and shows at most a mere unexecuted intention to. give the land to plaintiff. That proposition would be true as to the effect of the testimony of some of the witnesses, but, while the statements repeated by them do tend to show a mere intention, they are followed and supported by others clearly tending to show a gift actually made, and all taken together make up a formidable case. It is not true, indeed, counsel do not argue, that the delivery of a formal conveyance is absolutely essential to a parol gift of land when possession has been taken and improvements have been made by the donee. But is is urged that, to establish the gift by parol, the proof must be clear and conclusive. Undoubtedly such a gift will be upheld only on a clear and unequivocal showing. *Truman v. Truman,* 79 Iowa, 506, 721. This does not mean, of course, that the proof in support of the gift must be undisputed. Such a rule would mean, in practical operation, that no contested claim of gift could ever be established. The law requires nothing more than that the result shall not be reached by a mere balancing of doubts or probabilities, but by clear and unequivocal proof of facts upon which a court or jury may reach a reasonably satisfactory conclusion. In other words the rule does not require absolute certainty, but reasonable certainty of the truth of the ultimate fact in controversy. *Neale v. Neale,* 9 Wall. (U. S.) 1 (19 L. Ed. 590); *Wylie v. Charlton,* 43 Neb. 840 (62 N. W. 220.) While there are some earlier cases to the contrary, the rule is now well established that parol gifts of land where the donee goes into possession and makes permanent improvements will be upheld in equity if not at law. *Moore v. Pierson,* 6 Iowa, 298; *Peters v. Jones,* 35 Iowa, 512; *Neale v. Neale,* 9 Wall. (U. S.) 1 (19 L. Ed. 5.90); *Wooters v. Hale,* 83 Tex. 563 (19 S. W. 134); *Lobdell v. Lobdell,* 36 N. Y. 327; 14 Am. & Eng. Ency. Law (2d Ed.) 1041; *Kurtz v. Hibner,* 55 Ill. 514 (8 Am. Rep. 665); *Freeman v. Freeman,* 43 N. Y. 34

(3 A. M. Rep. 657); *Potter v. Smith*, 68 Mich. 212 (35 N. W. 916); *Poullain v. Poullain*, 76 Ga. 420 (4 S. E. 92); *Wylie v. Charleton*, 43 Neb. 840 (62 N. W. 220); *Ford v. Steele*, 31 Neb. 521 (48 N. W. 271); *Fairfield v. Barbour*, 51 Mich. 57 (16 N. W. 230); *Burkholder v. Ludlam*, 30 Grat. (Va.) 255 (32 Am. Rep. 668); *Story v. Black*, 5 Mont. 50 (1 Pac. 1, 51 Am. Rep. 37); *Woodbury v. Gardner*, 77 Me. 71; *Dozier v. Matson*, 94 Mo. 332 (7 S. W. 268, 4 Am. St. Rep. 388); *Ungley v. Ungley*, 22 Eng. Rep. 535; *Hugus v. Walker*, 12 Pa. 173; *Law v. Henry*, 39 Ind. 414; *Haddon v. Haddon*, 42 Ind. 378; *Smith v. Yocum*, 110 Ill. 145.

In Freeman v. Freeman, *supra*, the New York court says that a parol promise to give land, followed by acceptance of the possession and erection of improvements, stands in equity on an equal footing with a parol promise to sell where possession is surrendered and the purchaser performs on his part. It is not a case, the court says, of a promise without a consideration. " Anything that may be detrimental to the promisee or beneficial to the promissor, in legal estimation, will constitute a good consideration for a promise. Expenditures made in permanent improvements upon land with the knowledge of the owner, induced by his promise made to the party making the expenditure to give the land to such party, constitute in equity a consideration for the promise." Says the Supreme Court of Arkansas: " Chancery will not decree performance of a mere voluntary agreement. But, when a donee enters into possession and makes improvements on the land, the money thus expended on faith of the gift is a consideration on which to ground a claim for specific perfomance." *Guynn v. McCauley*, 32 Ark. 97. To the same effect is the language of the Supreme Court of the United States: " And equity protects a parol gift of land equally with a parol agreement to sell it, if accompanied by posession and the donee induced by the promise to give it has made valuable improvements on the property." Neale

v. Neale, *supra.* In Kurtz v. Hibner, *supra,* decided by the Illinois court it is said: "A court of equity will always enforce a promise upon which reliance is placed and which induces the expenditure of labor and money in the improvement of land. Such a promise rests on a valuable consideration. The promisee acts upon the faith of the promise. We can perceive no important distinction between such a promise and a sale." ·In the case of *Potter v. Smith,* 68 Mich. 212 (35 N. W. 916), a gift of land was upheld under circumstances much less favorable to the donee than we have in the instant case. There the donor, after making the parol gift, had mortgaged the property for his own benefit and later had made a deed of a part of the property to a third person and still later included it all in a deed of general assignment for the benefit of his creditors, and yet, as the donee had taken possession under the gift and improved the property the gift was upheld as against all other claims except the mortgage, which was sustained by reason of an estoppel *in pais.* A like rule has been applied in Minnesota. *Schmitt v. Schmitt,* 94 Minn. 414 (103 N. W. 214). Where a large number of persons testified to statements made by the owner of land in his lifetime to the effect that he had given the land in question to plaintiff, and that plaintiff fixed it up to suit himself, and where it was shown that plaintiff went into possession and expended $1,100 in improving the property, the gift was held to be sufficiently established, although the mother and other members of the family testified that they had never heard of the gift, and that the father had always spoken of the property as his own, and that he used a stable on the land for keeping his own cow and horse. *Loney v. Loney,* 86 Md. 652 (38 Atl. 1071). Speaking of the effect of the proved statements and the declarations of the deceased the court says, in language which is peculiarly applicable to the case before us: "The evidence of the many witnesses who testify distinctly and positively to the old man's declarations to this point re-

quires that we should believe it. None of the witnesses for the defense were present when the father's declarations on this subject are alleged to have been made, and the contradiction to them is altogether inferential." Then, after referring to the entry of the donee into possession and the making of improvements, the court proceeds: " This action on his part consummated his title in equity and it could not be affected or defeated by subsequent statements or conduct by the giver." As to the sufficiency of admissions and statements by the alleged donor as evidence of a gift see, also, our own case of *Franklin v. Tuckerman,* 68 Iowa, 572.

In a case where there was no direct proof of an express promise to execute a deed it has been said that " a court of equity is not without power to require the execution of a 3. SAME: deed of real estate, though evidence should specific performance. not show an express agreement " therefor. See, also *Drum v. Stevens,* 94 Ind. 181; *Burton v. Duffield,* 2 Del. Ch. 130; *Darke v. Smith,* 14 Utah, 35 (45 Pac. 1006); *Floyd v. Floyd,* 97 Ga. 124 (24 S. E. 451); *Ward v. Edge,* 100 Ky. 757 (39 S. W. 440).

We have cited sufficient authority to indicate the equitable rule that a gift of land, once fairly made and accepted by taking actual possession of the property and expending some substantial amount in money or labor in its permanent improvement, will not be allowed to be defeated because of the donor's failure to make a formal and sufficient conveyance. We think, also, that, under the law of evidence as applicable to this class of cases, the fact of the gift has been clearly and satisfactorily established.

It follows that the decision appealed from must be reversed, and that plaintiff's title be quieted as prayed.— *Reversed.*