IDA KISSLING, Appellee, v. MONTICELLO STATE BANK et al.,
                              Appellants.

**FRAUDS, STATUTE OF**: Real Estate—Oral Contract—Evidence. Evi-
1  dence sufficient to establish an oral contract for the conveyance of real
   estate may be found in the unequivocal and definite testimony of the
   claimed grantee, which testimony was uncontradicted, though the op-
   portunity to contradict was present and immediately available, plus
   the strong corroboration afforded by the actual execution by the
   grantor of a deed which was not effectually delivered.

**DEEDS**:  Consideration—Care and Nursing.   An oral contract for a
2  deed of conveyance is supported by ample consideration,—if any con-
   sideration be necessary,—in the agreement of the grantee to care for
   and nurse the aged grantor during his lifetime, whether such time be
   long or short.

Headnote 1:  24 C. J. p. 278.  Headnote 2:  39 Cyc. p. 1209.

Headnote 1:  25 R. C. L. 551.

*Appeal from Jones District Court.*—ATHERTON B. CLARK, Judge.

                    FEBRUARY 15, 1927.

    Action to quiet title.  The opinion states the facts.  From
a decree for plaintiff the defendants appeal.—*Affirmed.*

    *E. E. Reed*, for appellants.

    *Olive S. Johnson* and *John M. Redmond*, for appellee.

    VERMILION, J.—The decedent, Peter C. Smith, died on May
28, 1923, at the age of 86.  His wife had died on February 20th
preceding.  They had no children.  The wife had, for some time

1. FRAUDS, STA-     prior to her death, been an invalid; and the de-
TUTE OF: real      cedent was not strong, and suffered from ills
estate: oral con-
tract: evidence.   incident to his years.  The decedent, prior to
his death, was the owner of considerable property, including
that in controversy, which was his home, and was worth from
$5,000 to $7,000.  For a short time prior to the death of his
wife, the appellee had been employed as a housekeeper, and in

caring for Mrs. Smith. After the death of his wife, the decedent employed appellee in the same capacity for himself, at a wage of $20 per week. In addition to performing the household duties, appellee attended the decedent frequently when he left the house, and performed personal services for him, in the nature of nursing, particularly in the latter days of his life, and remained with him until his death. On April 13, 1923, the decedent executed a warranty deed for his home property to the appellee, and left it with the Monticello State Bank, with the following written direction:

"Monticello, Iowa.
"April 13, 1923.

"To the Monticello State Bank: .

"I have this day placed in your hands, to be held in trust by you as herein provided, a deed conveying the home property that I now occupy in Monticello to Mrs. Ida Kissling.

"You are instructed to hold this deed in trust during my lifetime and at once following my death, to deliver it to said Ida Kissling, provided, however, I do not during my lifetime call upon you to deliver it back to myself.

"P. C. Smith."

The decedent never requested the return of the deed, and it was in the hands of the bank at his death.

The appellee's claim to the property in question is predicated both upon the deed, which she claims was effectively delivered by the deceased, and upon an alleged oral contract with him that she should have the property if she stayed with the decedent until his death.

In the view we take of the latter claim, it is unnecessary that we determine whether there was an effective delivery of the deed. If appellee established an enforcible contract for the property itself, the decree below must be affirmed, whether there was a delivery of the deed or not.

I.   Appellee claimed that she had an oral contract with deceased that she should receive the property in controversy if she remained with him as housekeeper and cared for him until his death, and that she fully performed the contract on her part. The validity and enforcibility of such a contract, if the contract and the performance thereof by one party are estab-

lished by clear, unequivocal, and definite evidence, cannot be questioned. *Bevington v. Bevington*, 133 Iowa 351; *Boeck v. Milke*, 141 Iowa 713; *Stennett v. Stennett*, 174 Iowa 431.

The deed in question was prepared by H. M. Carpenter, the president of the Monticello State Bank, at the bank. The appellee accompanied the deceased to the bank on that occasion and left him there, and returned there for him later. She also testified:

"Mr. Carpenter was at the Smith home the day after Mrs. Smith died. Sometimes for about a half an hour he talked to the old gentleman. He was there again the day before the deed was made, in which I took no part. Mr. Smith told Mr. Carpenter that he wanted to make a deed in my name. Mr. Carpenter asked him why. Mr. Smith answered that I was the only one who stayed with him and took care of him and his wife, and he wanted to show that he was thankful; and Mr. Carpenter said, 'You have already done well by her by giving her more wages;' and asked me if I wasn't satisfied. Mr. Smith again said that he wanted to do more by me, and wanted to leave me his homestead. I was to stay with Mr. Smith until his death, for that deed."

No objection was interposed to this testimony. It was not contradicted by Carpenter, although he was examined as a witness. The execution of the deed on the day following this conversation and the very terms of the direction under which it was deposited in the bank afford the strongest of corroboration for the testimony of appellee and support for her claim. Whether there was such a delivery of the deed as to make it effective to convey a present title or not, no one can read the record, including this direction, without being convinced that it was the purpose of the decedent that appellee should receive the property if she remained with him and cared for him till his death, and, at the same time, to protect himself and his estate in case, for any reason, she did not do so. To conclude otherwise would be to impute to him most unworthy motives, of which there is not a particle of evidence. It is not entirely clear from the record whether the statement of the appellee in her testimony quoted above, "I was to stay with Mr. Smith until his death, for that deed," was a part of what the decedent said to Carpenter, or was the conclusion of the witness as to the terms

of an agreement between herself and decedent. If the former, it was a statement by the deceased in appellee's presence of the very contract under which she claims, and was not denied by Carpenter. If the latter, it does not lose its probative force, because a valid objection might have been lodged against it. In either view, it constituted uncontradicted evidence of the claimed agreement.

There are other circumstances that have some tendency to support the contention of appellee. Decedent's will, made before the death of his wife, gave all of his property, after the payment of his debts, to the wife. A few days after her death, he executed a codicil, by which he gave $10,000 in trust for a designated church; $2,000 to a young man who had worked for him, conditioned on his continuing in his service; $1,500 to the appellee, on a like condition; $2,000 to a named niece; $100 to each of the nephews and nieces of himself and his wife, except the one named; and all the remainder of his estate to the trustees of a hospital, for the purpose of erecting a nurses' home as a memorial to himself and his wife. The deed in question was executed about a month and a half after this codicil, during which time appellee had been caring for him. His estate, including the property in controversy, was appraised at over $43,000.

It is plain that the decedent felt himself under no obligation to leave any considerable portion of his property to those who might be thought, by reason of blood relationship, to have some claim upon his bounty, and that he desired to reward those who cared for his personal wants up to the time of his death. It is quite apparent that he was entirely dependent upon the services of strangers for the care and attention his feeble health and declining years required, and that he recognized that this could best be secured to the end of his days by the promise of material reward. The evidence shows, without dispute, that appellee continued to perform her duties and to minister faithfully to his wants to the hour of his death.

There is in the record not the slightest contradiction, either directly or circumstantially, of the testimony of the appellee concerning the existence of the claimed contract, although—a circumstance somewhat unusual in this class of cases—a witness was available who could have done so, had it been untrue. The want of contradiction, when, if her testimony was in any respect

false, contradiction was possible, removes any suspicion that her testimony was unduly colored by her interest, or that her claim to have taken no part in the conversation about which she testified was a specious, though time-honored, evasion of the statute that excluded her testimony as to a personal transaction with the deceased. We agree with the learned trial court that the contract was established by the degree of proof required in such cases.

II. Appellants, without pleading a want of mental capacity on the part of decedent to make the deed, alleged that it was obtained by appellee by fraud and undue influence; and they introduced much testimony tending to show that he was both mentally and physically weak, as bearing upon that issue. They also contend that the relations between decedent and appellee were of such a confidential character, and that appellee so dominated him in his weakened condition, that the burden was on her to establish that the deed was fairly and deliberately made, and was not procured by undue influence.

We shall not extend this opinion by setting out the testimony in any detail. It showed that decedent was weak physically, and required assistance in climbing stairs, and at times in walking; and that appellee usually accompanied him, and rendered this necessary aid. He was forgetful and absent-minded. There is some testimony which, it is claimed, shows that he was influenced by appellee in minor matters, such as the disposition of his wife's clothing and the purchase of a new car. This is denied by appellee. In business affairs he seems to have relied to some extent upon Mr. Carpenter, but, so far as is shown, controlled and managed his own business. The latter, or some employee of the bank, drew the checks by which appellee's weekly wages were paid her, and performed other services for him. On the day following the execution of the deed, Carpenter, apparently at decedent's request, rendered a detailed account in writing of decedent's business affairs, including a statement concerning the execution of the deed, with the request that, if it was not in accordance with his understanding, he would let Carpenter know, that necessary explanations might be made.

There is not only no testimony tending to show the exercise of any influence whatever by appellee to induce the execution of the deed, but it affirmatively appears that Carpenter

was consulted about it before it was made; that he at least questioned its advisability; and that decedent persisted in his purpose. If it should properly be held that such a relation of confidence existed between appellee and decedent, by reason of her employment as housekeeper and nurse, her constant association with him, and such influence and control over him as would be incident to that association, as that the burden was upon her to establish that the contract was freely and voluntarily made by him, and without undue influence on her part, still we are persuaded that she has fairly supported that burden.

Laboring under the statutory prohibition that excluded her own testimony as to any personal transactions with deceased, she has shown that he consulted Carpenter, his business adviser, on the subject, and, in spite of the latter's protest, adhered to his declared purpose to carry out the arrangement; that she took no part in this conference; and that later, and when she was not present, the deed and directions to its custodian were prepared by the same adviser. We cannot but be strongly impressed with the fact that, if there was anything in transactions testified to by appellee at all contrary to her version of them, or that tended in the slightest degree to impugn her good faith, or to show undue influence, the testimony of Carpenter was available at all points. As the executor of the estate, he was actively opposing her claim. The bank of which he was president was also a party, as a trustee for one of the legatees under the codicil. Since he did not speak in contradiction of her testimony as to what occurred when he, the deceased, and she were present, we see no reason to question, much less reject, her story. As somewhat pertinent to this situation, see *Coughlin v. St. Patrick's Church,* 201 Iowa 1268.

The allegation of undue influence is directed more particularly to the deed, but we have considered the question as affecting the contract. In the absence of delivery, the deed was but an item of evidence, and its execution but a circumstance, though persuasive in character, tending to establish the contract.

III. It is urged that the consideration for decedent's agreement that appellee was to receive the property was inadequate, and that this is a badge of fraud.

It is quite apparent that decedent's purpose was to secure the services of appellee during his life, be that long or short,

and without regard to the character or amount of the services that might be required, and that he desired to reward her in case she remained with him. He might have lived for years, and have required unremitting attention and services of a most burdensome character. The transaction was somewhat in the nature of a gift, and yet there was a good consideration for his promise that she should have the property. It was his to give without consideration, if he so desired; and he could devote it to the securing of the attention and ministration that his increasing years and feeble health might require. There was no one bound by the ties of affection or relationship to whom he could look, but he must depend upon such faithfulness on the part of strangers as his means could secure. The appellee was paid a weekly wage for services actually rendered, but decedent had a perfect right to devote such part of his property to the securing of a faithful continuance of her services as he saw fit. The law will not say that, merely because of his early demise, the contract was unconscionable. As said in *Thompson v. Romack*, 174 Iowa 155, he had a right to make the contract. The question is not as to the value of the services, but whether he made the contract, as alleged, and in so doing acted voluntarily and without undue influence. We are satisfied from the evidence that he did so make the contract, and the judgment is—*Affirmed*.

*2. DEEDS: consideration: care reward and nursing.*

All the justices concur.