Walter W. Ross, Appellant, v. James Ross, Ellen Ross, Margaret Massey, and W. H. Massey, Susan Hardy and Charles Hardy, John M. Ross, Thomas Ross, George Ross, Amos Ross, Fred Ross, Roy Ross, Minerva Hummel, Charles Hummel, Florence Banks, J. F. Banks, Dan Smith, H. B. Smith, U. D. Smith, J. L. Smith, Amy Agnes, James Agnes, Myrtle Smith, Rosa Boden, Wm. Boden, Daisy Smith, Fred Smith, Boyson Ross, Dora Ross, Robert Ross, and Mary Ross, Appellees.

**Real property:** specific performance: evidence. Specific performance of a contract for the sale of land, where the vendor is dead,

will only be declared upon clear, satisfactory and convincing evidence; and although established it will not be enforced unless equitable.

**Same.** The oral admissions of a decedent are not as a rule satisfactory evidence in support of an action to specifically enforce his contract to convey land.

**Same.** To enforce specific performance of a contract it must be established substantially as claimed; and the contract must be mutual so that it could have been enforced by the vendor. It may be established by circumstantial evidence, but the circumstances must be clear and satisfactory and not explainable on any other theory equally as consistent.

**Same.** The relationship of the parties is a cogent circumstance, and the interests of the several witnesses should be carefully considered in an action to enforce specific performance.

**Same.** In an action by a son to enforce performance of an alleged oral contract of his deceased father to convey land to him, the burden of establishing the contract is on him; and in this action the evidence is reviewed and held insufficient to warrant a decree of specific performance.

*Appeal from Plymouth District Court.*—HON. F. R. GAYNOR, Judge.

TUESDAY, OCTOBER 25, 1910.

ACTION for the specific performance of an alleged oral contract for the conveyance of real estate by one Duncan Ross, now deceased, the father of the plaintiff and an ancestor of the defendants. The trial court denied the relief asked, and plaintiff appeals.—*Affirmed.*

*Wright, Call & Sargent* and *Struble & Struble,* for appellant.

*Shull, Farnsworth & Sammis,* for appellees.

DEEMER, C. J.—A branch of this litigation has al-

ready been before us in the form of a will contest, and
the opinion will be found reported in 140 Iowa, 51. In
the latter part of that opinion is a suggestion of the claim
made in this action. After that suit was brought and
while it was pending in this court upon appeal, plaintiff
commenced this action and his claim as disclosed by the
petition is:

Par. 5. That on or about the month of January,
1893, the plaintiff and the said Duncan Ross, Sr., made
and entered into a certain oral contract wherein the plain-
tiff agreed to move onto and work and farm the property
hereinabove described, and take charge of the same, break
up the grass land, and get the farm in shape to farm,
to do such hauling as the said Duncan Ross, Sr., might
desire done, look after the rent of the other farms be-
longing to the said Duncan Ross, Sr., keep a horse or two
for the said Duncan Ross, Sr., and pay the said Duncan
Ross, Sr., the sum of $2 an acre per year during the
life of said Duncan Ross, Sr., for the use of said premises,
and wherein the said Duncan Ross, Sr., agreed upon his
part that upon his death the real estate hereinabove de-
scribed should be and become the property of the plaintiff
herein.

Par. 6. That at said time the plaintiff herein was
residing upon a farm of his own in the vicinity of the
real estate hereinabove described.

Par. 7. That, after the making of said contract set
out in paragraph 5 and in pursuance thereof, the plaintiff
moved from his own farm to the real estate hereinabove
described, and has ever since resided thereon, and has
worked and farmed the same ever since. That he took
charge of the same, broke up the grass land, and got said
place in shape to farm. That he did such hauling for
said Duncan Ross, Sr., as said Duncan Ross, Sr., desired
done, looked after the rent of the other farms owned by
said Duncan Ross, Sr., as said Duncan Ross, Sr., desired
him to do, kept and cared for such horse or horses as
the said Duncan Ross, Sr., desired him to, and paid the
said Duncan Ross, Sr., the sum of $2 per acre for said
premises per year during his life, and did and performed

each and every thing required of him to be done under his said contract with said Duncan Ross, Sr.

Par. 8. That at the time of the making of said contract aforesaid, and at the time the plaintiff herein moved onto said premises, the same were in need of a large amount of work to put the same in good farming condition, all of which labor and work the plaintiff did. That, in addition to the matters and things required of him to be done under his said contract, he made numerous and expensive improvements on said premises in reliance upon the contract made with said Duncan Ross, Sr., that said premises were to become his property upon the death of the said Duncan Ross, Sr., all of which was done by the plaintiff with the knowledge of the said Duncan Ross, Sr.

Par. 9. That said Duncan Ross, Sr., died on the 21st day of April, 1906.

Par. 10. That said Duncan Ross, Sr., failed to make any conveyance of said premises hereinabove described to the plaintiff before his death, and failed to make any provision whereby said premises should pass to the plaintiff upon his death.

On the 5th day of October, 1908, John M. Ross, Daisy H. Peterson, Susan Hardy, Fred Smith, James Ross, Amy Agnes, John L. Smith, U. D. Smith, H. B. Smith, Daniel Smith, and Margaret Massey filed their answer to the petition of plaintiff, as follows: 'They have reason to believe that all of the allegations contained in plaintiff's petition are true, and that the plaintiff is entitled to and is the owner of the land described in his petition; that the deceased, Duncan Ross, contracted with the plaintiff to deed said land to the plaintiff; and that the plaintiff has fully complied with all of the conditions of his contract for said land as set forth in his petition. For these reasons, these defendants make no claim to said land, but admit that the plaintiff is the true owner of the same as alleged in his petition, and therefore these defendants pray the court that they may go hence with costs.'

Boyson Ross and David Ross, Robert Ross and Mary Ross joined issue with plaintiff, and, in addition to a general denial of the allegations of the petition, pleaded other defenses, some of which will be referred to as we

proceed. The case was tried to the court and held for several months before a decision was rendered. The decree was ultimately for the answering defendants, and plaintiff appeals.

The questions involved are almost wholly, if not entirely, questions of fact. The applicable rules of law are practically agreed to by counsel for the respective parties.

1. REAL PROP-ERTY: specific performance: evidence.

As the alleged vendor is dead and can not give his version of the matter, it is a wholesome rule of law that the testimony to sustain such a contract as is relied upon here must be clear, satisfactory, and convincing. *Holmes v. Connable,* 111 Iowa, 298; *Watson v. Richardson,* 110 Iowa, 673; *Allbright v. Hannah,* 103 Iowa, 98; *Bevington v. Bevington,* 133 Iowa, 351; *Truman v. Truman,* 79 Iowa, 506. Again, such contracts, even if established, must be equitable, or they will not be enforced. *Hamlin v. Stevens,* 177 N. Y. 39 (69 N. E. 118). Much has been written upon the law relating to this subject, and we can not do better than quote the following from one of our recent cases:

Before going into details, we wish, as already suggested, to say something as to the rules that should govern courts in passing upon cases of this kind. It will not do, as plaintiff's counsel seems to think proper, to hold that because a certain number of witnesses have testified to the making of the contract, and none have been called to deny it, plaintiff's case is established. The lips of the only two witnesses who could deny it are forever closed. The only person who could controvert the admissions alleged to have been made is the dead man against whose estate this claim is produced. There is no defense that can be made, save as it may be found in the improbability of the stories of the plaintiff's witnesses, when tested by comparison with other evidence in the case, or the ordinary rules of human conduct under similar circumstances. *Watson v. Richardson,* 110 Iowa, 673; *Laurence v. Laurence,* 164 Ill. 367 (45 N. E. 1073); *Wallace v. Rappleye,* 103 Ill. 229, 665. In this last case, which bears some similarity

to the one at bar in its facts, the court said in relation to the oral evidence offered: 'It is incumbent on the court to look upon such evidence with great jealousy, and to weigh it in the most scrupulous manner, to see what is the character and position of the witnesses generally, and whether they are corroborated to such an extent as to secure confidence that they are telling the truth.' So on the same subject the Supreme Court of Pennsylvania said: 'The temptation to set up claims against the estates of decedents, particularly such decedents as have left no lineal heirs, is very great. It can not be doubted that many such claims have been asserted which would never have been known had it been possible for the decedent to meet his alleged creditor in a court of justice. . . . Such claims are always dangerous, and, when they rest upon parol, they should be strictly scanned. Especially when an attempt is made, under cover of a parol contract, to effect a distribution different from that which the law makes, or that which the decedent had directed by his will, it should meet with no favor in a court of law. Even if such contract may be enforced, it can only be when it is clearly proved by direct and positive testimony, and when its terms are definite and certain. The danger attendant upon the assertion of such claims requires, as we said by Chief Justice Gibson in reference to a somewhat similar contract, that a tight rein should be held over them by making the quality, if not the sum, of the proof a subject of inspection and governance by the court, and by holding juries strictly to the rule described.' *Holmes v. Connable, supra.*

Much of the testimony relied upon by plaintiff consists of admissions or declarations said to have been made by Duncan Ross, deceased, during his lifetime, and it is well to have in mind the universal rule that such testimony is subject to many imperfections, and is not as a rule satisfactory. As said by the Supreme Court of Missouri in *Kinney v. Murray et al.,* 170 Mo. 674 (71 S. W. 197):

2. SAME.

The evidence consisting, as it does, in the mere repetition of oral statements, is subject to much imperfection

and mistake; the party himself either being misinformed, or not having clearly expressed himself, or the witness having misunderstood him. It frequently happens also that the witness by unintentionally altering a few of the expressions really used gives an effect to the statement completely at variance with what the party actually did say. . . . When we reflect upon the inaccuracy of many witnesses in their original comprehension of a conversation, their extreme liability to mingle subsequent facts and occurrences with the original transaction, and the impossibility of recollecting the exact equivalents, we must conclude there is no substantial reliance upon this class of testimony. The intrinsic weakness of this class of evidence is further enhanced in any given case by the length of time that has intervened since the declarations were made and the ease with which it can be manufactured and the temptation to do so, when all those by whom it could be contradicted are in their graves. Such evidence can and ought to have very little weight when it is sought by it to asperse the memory or set aside the last wills and testaments of worthy and just persons, executed in contemplation of death, and in the manner required by law disposing of their own property according to the dictates of their own consciences.

So much for the law of the case which is a necessary premise to the final conclusion. We shall not set out the testimony at length bearing upon the fact questions in dispute.

Plaintiff claims that he has established the contract pleaded by him in his petition and the full and faithful performance of all his part thereof, while defendants con-

3. SAME.     tend that no such contract has been established; that the testimony does no more than indicate an intent on the part of the testator to reward his son (the plaintiff) for work done or labor performed, which intent never took the form of a contract, and never became effective because for some reason testator changed his mind and devised the real estate in controversy by specific devise to others of his heirs. It is essential, of

course, that a contract be established substantially as claimed by plaintiff, and this contract must be mutual; that is to say, it must have been such an one as could have been enforced by the father during his lifetime had the plaintiff seen fit to violate it. Such a contract may, of course, be established by circumstances; but these must be strong, satisfactory, and not explainable upon any other theory equally as convincing.

The relationship of the parties is a cogent circumstance; for it may explain many matters which had they happened between strangers would have worn a very different aspect. Again, the interest of the several witnesses in the result of the suit must be carefully considered; and again, although this is an equity case, some effect must be given to the findings of the trial judge, who had practically all the witnesses before him, and who had the great advantage of observing their conduct upon the witness stand.

4. SAME.

We start with the proposition that deceased did not think he had a binding contract with plaintiff, for he willed the very property to which plaintiff makes claim to another, and it is not reasonable to suppose that the testator deliberately breached his contract, thus inviting lawsuits between his heirs and successors in interest. It is true that plaintiff had shown favors, if nothing more, to his father during his lifetime, and has also shown disadvantage to himself if the claimed contract is not carried out; but the relationship of the parties, and the motives which more often than the contrary explain such matters, must be taken into account. While there is direct testimony from plaintiff's wife as to the making of the alleged contract which is corroborated by other circumstances, there are many things which are undisputed that tend strongly to show that plaintiff did not think he had any binding contract with his father; but was relying upon his generosity to adequately provide

5. SAME.

for him by will. With the difference between an actual binding contract and a purpose and intent to provide for a child by will, many of the conflicts in the testimony and of the apparent contradictions in the evidence may be explained. That testator at times expressed himself as intending to give the farm in controversy to plaintiff when he came to make his will we have no doubt, but even this purpose was conditional, and was not, of course, carried out. Testator's conduct was such that he evidently intended to retain control of practically all his property until his death, and then to dispose of it according to his then present desires. He retained control and active management of practically all his property down almost to the day of his death, and surely expected to bestow his bounties by will according to his then views regarding the claims his various heirs had upon him. When he made his will he either intentionally violated his contract and disposed of the property to another, thus inviting controversy between his children, forgot that he had made such a contract as is claimed, or never made it. These are the only possible explanations of the matter.

Moreover, testator evidently had in mind some provision for plaintiff; for he specifically devised some real estate to him, and gave the property in controversy to another. This is significant of the fact that he did not forget the plaintiff, but had him in mind, and in distributing his estate evidently weighed the claims which the various beneficiaries in the will had upon him. Plaintiff is in the somewhat uneviable position of claiming the land devised to him, and also insisting upon land specifically devised to others. Moreover, plaintiff joined in a contest of testator's will, and did nothing to defeat its specific provisions until he had been beaten in the trial court. It is shown that testator regarded the claims of the devisee to whom he willed the land as superior to those of plaintiff, and it is absolutely certain that, when he made his will, he did not

think that he had sold the land to the plaintiff or even at that time intended to give it to him. He evidently intended his favorite beneficiary to have the greater share of his property, and never imagined that plaintiff would not only secure this land, but also the tract which he gave him by will.

Again, it is shown that, after plaintiff moved upon the land in controversy, he became dissatisfied and threatened to leave it that he might be freed from the care of so much property. This he would not have done had he contracted to buy it as now claimed. Furthermore, it is shown, without controversy, that plaintiff paid rent for the use of the land in controversy, although it now clearly appears that he did not pay all that he agreed to pay. And a fact of great significance is that long after the alleged contract was made plaintiff tried to buy the farm in controversy from his father by paying him the amount which he, the father, had invested in it. Plaintiff admits the circumstance, but endeavors to explain it away by the suggestion that he made the offer to extinguish his father's life estate, and to secure the absolute title. At that time the father was old, and plaintiff was in the undisputed possession of the land, paying but a nominal rent for it, and it is hardly reasonable to suppose that he intended to pay more than $10,000, to secure the absolute title, if, as now appears, the testator was not then making any claim in derogation of plaintiff's rights, whatever they may have been. Practically all the improvements upon the property were put there by the deceased, and plaintiff threatened to leave once at least if not more often because his father would not make other improvements. This does not comport with the notion that plaintiff had an enforceable contract for the purchase of the property. More significant than all else is the fact that, if disinterested witnesses are to be believed, plaintiff frequently stated that he had no present claim to the land in controversy, that,

at most, he hoped to get it when his father made a disposition of his property by will. Again, it is shown that plaintiff failed and refused to make any substantial or permanent improvements upon the land for the reason that both he and his wife, the latter being plaintiff's most important witness, frequently stated that they did not know whether they would ever get it or not. These statements clearly indicated that they were relying not upon any contract, but upon testator's bounty. It is hardly to be supposed, if plaintiff had the contract which he claims, that he would have joined in the will contest which finally reached this court, and to which we have already referred, and it is strange that he did not attempt to enforce his alleged contract until he had been defeated in his effort to set aside the will. His claim in that contest was not that he owned or had a binding contract for the land in controversy, as he now insists; but that the defendant to whom testator devised the property unduly influenced the father and secured a specific devise of the land himself. These positions are entirely inconsistent, although in the will contest plaintiff herein introduced testimony not to show a contract, but a purpose on the part of testator to devise the land to him, which purpose was thwarted by defendant Boyson Ross, the party to whom the land in controversy was devised.

We have gone over the record with care, and are satisfied with the conclusion of the trial court. Indeed, were we in doubt regarding the exact truth, we should be disposed, in view of the heavy burden resting upon plaintiff, to give some effect to the findings of the learned trial judge.

The decree must be, and it is, *affirmed.*