M. AVIS LOCKIE et al., Appellants, v. ALANSON BAKER et al., Appellees.

MARCH 13, 1928.

REHEARING DENIED MAY 18, 1928.

*Charles Lockie* and *George Sturges*, for appellants.

*Jepson, Struble, Anderson & Sifford* and *John F. Stecker*, for appellees.

DE GRAFF, J.—The plaintiff Mrs. M. Avis Lockie and the defendants Alanson Baker and Sarah Talbott are the only surviving children of Mary E. Baker, who died testate on the 21st day of August, 1926. The will was filed for probate in the office of the clerk of the district court of Iowa in and for Plymouth County, and October 4, 1926, was the date fixed, upon due notice, for hearing on the matter. No contest was made or objections filed in probate. The three children were named as beneficiaries in said will, but the estate of the testatrix was not divided equally among her said children. The plaintiff received the smallest share, and this fact is the provocation of the instant action, based on an alleged oral agreement between the plaintiff Mrs. Lockie and the other two beneficiaries named in the will.

It appears that, on the day following the mother's funeral, the son, Alanson Baker, produced the will, and it was read by him in the presence of all of the beneficiaries. There was little said at that time concerning the terms of the will, but the plaintiff Mrs. Lockie did express disappointment.

On the 3d day of October, 1926, at the home of plaintiff's sister, Mrs. Sarah Talbott, in Akron, Iowa, there was a meeting of the beneficiaries. This meeting was arranged by plaintiff. She testified:

"We [M. Avis Lockie and husband] went there with the intention of having a settlement of the differences in the will, so that we would not have to have a case in court and the will broken, and we talked that over. I told them, if there wasn't some settlement or agreement before the time of the probating of the will [the next day], that we would contest the will. I

said I would contest the will if there wasn't some agreement made that was somewhere near fair."

It is quite apparent that the controversy from the beginning is predicated on the thought and belief of the plaintiff Mrs. Lockie that she was entitled to a larger share in the estate than was given to her under the provisions of the will of her mother. Undoubtedly she had intimated an intention to contest the will, and it is her claim that, to avoid the threatened contest, the defendants agreed to pay her $14,000. The defendants specifically denied, in answer, that they made or entered into the contract as alleged by plaintiff, or any contract of any kind or character by which they agreed to pay to the plaintiff the sums alleged in the plaintiff's petition. The defendants further pleaded that the alleged contract of settlement is and was without any consideration.

This case does not present what is commonly denominated a "family settlement." There was no family difficulty. Amicable relations existed between the parties, and the sole basis for any disappointment on the part of Mrs. Lockie was the share she was devised by her mother. She felt that the other beneficiaries should make contribution to her, in order that the estate of her mother should be more equally and equitably distributed than as provided in the will. As a matter of law, the daughter, Mrs. Lockie, was not entitled to any share in the estate. The mother had the legal right to make and execute the will as it was made.

There is no claim or evidence in the instant case that discloses any legal ground or basis for the contest of the will of Mrs. Baker. Plaintiff (Mrs. Lockie) in fact admits this proposition. In her judgment, the will was unjust, and she thought that, as the daughter of the testatrix, she had not been treated right. The record is as follows:

"Q. And you hadn't said anything then [prior to the meeting of the beneficiaries at the Talbott home] about contesting, had you? A. No, I hadn't said anything about it, but I thought it very unjust. Q. And what you thought or claimed about the will was that you thought you had not been treated equally with the other children? A. I thought it was unjust.

I thought I wasn't treated right. Q. That is all that you claim; that is all that you claim now, isn't it? A. Yes."

There is no claim of fraud, undue influence, or lack of testamentary capacity. The quite universal rule is that, to sustain a compromise and settlement, it must appear that the claim or controversy settled, though perhaps not in fact valid in law, was presented and demanded in good faith, and upon reasonable grounds for inducing the belief that it was enforcible. *Montgomery v. Grenier*, 117 Minn. 416 (136 N. W. 9); *Sullivan v. Collins*, 18 Iowa 228.

There is one pertinent and controlling question in this case. Was the oral agreement, if made, as alleged by plaintiff, a valid, and therefore enforcible, agreement by specific performance? In an action for specific performance, the burden is on the plaintiff to establish the alleged contract, and the evidence must be clear, satisfactory, and convincing. Specific performance is not granted as a matter of right in every case. *Wilken v. Voss*, 120 Iowa 500; 4 Pomeroy's Equity Jurisprudence (4th Ed.) 3319, Section 1400. Contracts, to be specifically enforced, must be so certain and definite in their terms as to leave nothing to conjecture, or to be supplied by the court. The terms must be certain and complete in themselves. *Marti v. Ludeking*, 193 Iowa 500. A court of equity may properly refuse specific performance of an agreement of doubtful mutuality. The minds of the parties must fully meet on the terms of the contract sought to be specifically enforced. *Briles v. Goodrich*, 116 Iowa 517.

The plaintiff in the instant case declared upon an express oral contract, and the plaintiff alleges, *inter alia*, "that the oral agreement was therein entered into by and between M. Avis Lockie, Sarah Talbott, and Alanson Baker."

By virtue of the terms of this agreement, the plaintiff claims that Sarah Talbott was to pay $4,000, and Alanson Baker was to pay $10,000, in settlement of the proposed contest of Mary E. Baker's will. This allegation is specific and unambiguous. The prayer of the plaintiff is for a decree of specific performance of the contract on the part of the defendant appellees. A reading of the record makes it plain that there is no certainty in the evidence as to what actually transpired

in the conversation between the parties when they met at the home of Mrs. Talbott on the eventful Sunday morning. There is no certainty as to what the actual agreement was, if one was made. There was no proof that Mrs. Talbott agreed or acquiesced to the terms of any contract. The most that can be said is that there was a disposition on the part of Mr. Baker and Mrs. Talbott's husband to contribute something to Mrs. Lockie, to make a more equitable distribution of Mrs. Baker's estate. It appears that Mrs. Talbott did not agree to any specific proposition. To illustrate this, we quote from the record:

"Q. You [Mrs. Lockie] didn't have any talk personally about the matter with Mrs. Talbott at all, did you? A. No, only as we talked as we were all together. Q. I say you didn't have any other talk, nor did Mr. Lockie, with Mrs. Talbott, did he? She never said that she would do anything herself? You never heard her, when in your presence, say to Mr. Lockie or anyone that she would pay you anything, or would do anything? A. Not as I know; only as her husband spoke for her, as I supposed. Q. No, you had talked with your brother, Mr. Baker, about this will, and that you regarded it unjust and unfair to you? He said, as I understand you, that he would do something for you personally,—isn't that true? A. Yes."

"Well, if it was to be a life estate which we were to get, —if it was to be tied up in that manner,—I wanted $15,000; but my husband thought that, if we could get $10,000 without any strings on it, it would be better, and we would take it and make more from it. Q. Mr. Baker, however, never did agree to that, did he? A. I couldn't say he wanted the life-estate agreement on it. Q. Well, do you claim that Mr. Talbott agreed to give you $4,000 in addition to the $10,000? A. He said: 'We will give that much, to make it equal.' Q. Mrs. Lockie, to refresh your recollection, isn't this true, that, when you were going over these matters and talked it over, that Mr. Talbott said, 'I haven't anything to say,—it is not my business,'—or words to that effect, but he said, 'If I can do anything to fix it up, I will give $4,000 towards the $10,000?' A. He said that when my brother and sister were in the front room, talking it over; but after my sister and her husband went into the kitchen to talk it over, and came back, he didn't say it at all. Q. He

never imparted that to anybody? A. Not after he went into the kitchen. After he went out in the kitchen, he came back, and said nothing more about it. I never agreed to accept $10,000 in full settlement. We first said we wouldn't take less than $15,000, and then they wanted to give $10,000 with strings on it, and the $4,000; and nothing more was said. Q. What is the least you said you would take, and not contest the will? A. I think it was $15,000, to start with. Q. But you are now asking $14,000? A. Well, the $10,000 had strings on it. The $12,000 was to be cash, without strings on it. Q. May I have a direct answer to that? I say you are now asking $14,000? A. Yes, considering we have strings on it. We have no agreement with Mrs. Talbott about the signing of the mortgage."

Mr. Lockie testified:

"Mr. Baker told me he was willing to give something out of his own property to my wife. He is the one who, in fact, opened up the subject. Q. So that, at that time, when he made the statement to you, there had never been any suggestion as to any contest of the will or anything of that kind, but it was a voluntary offer on his part? A. It was. Q. As a matter of fact, Mr. Lockie, Mrs. Talbott herself never at any time said, in your presence, she would pay any part of this fund, did she? A. She did not."

The foregoing constitutes a sufficient quotation to indicate the factual setting of this case, and to indicate that the pleaded contract is a joint contract on the part of the appellees, or it is nothing. Relief in equity must be consistent with the facts pleaded, and a court of equity does not undertake to make a contract for the parties or to supply any essentials thereof. True, Section 10975, Code of 1924, provides that, where two or more persons are bound by contract, either jointly only, or jointly and severally, or severally only, an action thereon may, at the plaintiff's option, be brought against any or all of them. The following section provides that any action against one or more of several persons jointly bound shall not be a bar to proceedings against the others.

These sections of the Code are in no sense controlling on the issues herein involved. They have to do with matters of prac-

tice and procedure, but do not create substantive contractual liability. Is the alleged agreement in the instant case joint, or is it several? Must the plaintiff recover, if at all, from both defendants? Clearly, there was a joint contract, if any there was made.

To determine whether or not the instant contract, as alleged, is severable, the obligation of the appellant must be examined, to see whether or not her obligation under the contract was to deliver and furnish a separate consideration to each of the other two parties. It is obvious that the appellant was tendering to the appellees, under the alleged contract, but one consideration,— to wit, the refraining from contesting the will in question. The appellant claims that she was to receive the aggregate sum of $14,000 for refraining from contesting the will, and that a certain portion of this sum was to come from one party, and a certain portion from another.

Let us, for a moment, reverse the situation, and assume that the appellant is now attempting to contest the will, and that the appellees were attempting to prevent a contest, and pleaded the contract now sued upon, to prevent such a contest. It is clear that appellant could therein successfully contend that the agreement to refrain from a contest was based upon an agreement to receive $14,000, and that, if the obligation of one of the parties to pay a portion of this sum was void and unenforcible, or if the obligation never came into existence, then the proposed contract made by the appellant to refrain from a contest in consideration of the aggregate sum of $14,000 never ripened into a complete contract. Whether the instant contract is joint or several depends primarily upon the intention of the contracting parties, as revealed by the language of the agreement and the subject-matter to which it refers. *Nabors v. Producers' Oil Co.*, 140 La. 985 (74 So. 527). The entirety of a contract depends upon the intention of the parties, and not upon the divisibility of the subject-matter. *Bamberger Bros. v. Burrows*, 145 Iowa 441. Corpus Juris states the rule thus:

"Where several persons execute an instrument, in parol or under seal, on the same consideration, at the same time, and for the same purpose, and which takes effect from a single delivery, it is a joint promise." 13 Corpus Juris 580, Section 579.

It was a joint promise in this case, and so pleaded.

Without further comment, we reach the conclusion that the contract as declared upon has not been proven. The trial court properly dismissed the petition. The decree entered is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.