FLOYD E. BREWER, Appellant, v. EVA KING et al., Appellees.

No. 40797.

JUNE 20, 1931.

666

Keenan, Barnes & Clovis, for appellant.

L. H. Mattox, for appellees.

WAGNER, J.—Marada Brewer died testate during the summer of 1928, leaving as his heirs-at-law the following, to wit: Eva King, May Varley, J. Fred Brewer, George O. Brewer, daughters and sons of the deceased; also Harry Baker, Maggie Baker-Ritchey, Preston Baker, Walter Baker and Viola Baker, children of a predeceased daughter of the decedent's; also Donald Vance, a son of a predeceased daughter of the decedent's; also Annis Hatch-Walker, a daughter of a predeceased daughter of the decedent's; and also the plaintiff, Floyd E. Brewer, a son of Lide Brewer, a predeceased son of the decedent's. All of the aforesaid named persons are parties to this litigation and the administrator with the will annexed of said estate is also made a party defendant. At the time of his decease, Marada Brewer was the owner of both real estate and personal property. By the terms and provisions of his last will and testament and codicil thereto, he directs that all of his just debts be paid; bequeaths to the plaintiff the sum of $100.00, to each his granddaughter, Annis Hatch (Walker), and his grandson, Donald Vance, the sum of $4000.00 and devises the remainder of his estate in five equal shares to his children, Eva King, May Varley, J. Fred Brewer, George Brewer, and the aforesaid named children of Gertrude Baker, a predeceased daughter. The plaintiff filed verified objections to the probating of the will and codicil, upon the grounds of mental incapacity and undue influence, but the objections were subsequently withdrawn and the will and codicil admitted to probate.

The plaintiff in this action seeks to obtain the same interest in the estate that he would have received had his grandfather, Marada Brewer, died intestate—the same result for himself which he would have accomplished had he pursued a successful attempt in contesting the will. He bases his cause of action for the requested relief upon an alleged oral contract. He alleges

in his petition, in substance, that his father, Lide Brewer, died intestate leaving his mother, Goldie Brewer, as his surviving widow and himself as the sole heir; that his father, at the time of his death, was the owner of certain personal property of which his grandfather, Marada Brewer, took possession and had failed to account for the same; that J. M. Darby was appointed special administrator of the Lide Brewer estate and also guardian of this plaintiff; that, after said appointment there was a settlement of the matter by and between the guardian, the special administrator and his mother, Goldie Brewer, on the one hand and Marada Brewer on the other; that it was orally agreed by and between the said parties that Marada Brewer should pay unto the special administrator the sum of $1004.00 and upon his death should leave to the plaintiff the share of the property of Marada Brewer which would have gone to his father, Lide Brewer, had Marada Brewer died intestate survived by the son, Lide Brewer—"that is, that the said Marada Brewer would not in any manner cut off or diminish the share which the said plaintiff would receive from the estate of the said Marada Brewer, should the said Marada Brewer die intestate, by will or otherwise." It is apparent from the record, that the $100.00 bequeathed to the plaintiff is only a small part of what the plaintiff claims he was entitled to under said alleged oral contract. The defendants in their answer deny the averments of the petition and in so far as the alleged oral contract affects the real estate, they plead that the same comes within the Statute of Frauds.

It appears that an attempt was first made to settle the estate of Lide Brewer, the father of the plaintiff, without administration. The personal property at the time of the son's death consisted of $615.00 in money on deposit in the bank, a small amount in notes, less than $200.00, and a team of horses. The father, with the consent of the widow, took possession of this property, apparently with the thought in mind to pay the debts and charges and settle the estate and save the costs of administration. It appears that the widow became dissatisfied with the father's management of the estate property and on her application, J. M. Darby was appointed administrator (denominated in the record special administrator) of said estate. Darby was also appointed guardian of the son. Apparently,

litigation involving the possession of the aforesaid property by Marada Brewer was threatened or contemplated. A meeting of the father, the widow, Goldie Brewer, and the administrator was had in the office of Jennings & Mattox in Shenandoah. Mattox was not present at this interview. Of those who participated in the matter of settlement, Jennings, Darby and Marada Brewer are dead, Goldie Brewer being the sole survivor. The plaintiff relies upon what occurred at that time, as testified to by his mother, as constituting the alleged oral contract upon which he bases his cause of action. Goldie Brewer testified:

"There was a conversation at that time in regard to the settlement of the controversy that we were having. The lawyer asked Mr. Brewer if he was ready to settle and he said, 'Yes, on condition.' And they asked him what the conditions were, and he said that he would be willing to settle if I would—Well, in the first place there was two sets of harness and the wagon and saddle that I forgot to mention in my claim, and I mentioned it there that day, and Mr. Brewer said that if I would let that drop and make this settlement final, so that I would not be asking him for any more money, so it would not be possible to go to him for any more money, he would gladly settle, and they wanted to know if I was"—Mr. Barnes, interrupting: "What was done or said about Floyd Brewer?" "I said that I was willing to settle if Grandpa Brewer would withdraw his threats that he had made to Floyd and see that Floyd at his death would get his father's share of the estate, and Mr. Brewer said that he would do it, and he said at his death he would see that Floyd got his father's share of his estate."

The widow further testifies that she then left the room and was not present during the further deliberations. As a result of the conference among the attorney, the administrator and Marada Brewer, the latter paid the administrator the sum of $1004.41, the administrator giving him a receipt reciting:

"Received of Marada Brewer, the sum of $1,004.41 in full settlement and compromise and accord and satisfaction of the above entitled estate against him for monies and property of estate received by him and now accounted for by him to the administrator herein."

The administrator made his report to the court, and upon final distribution, after the payment of the debts and charges of the estate, the widow received one third and the guardian of the plaintiff received two thirds of said estate. The plaintiff contends that, under the aforesaid record, the decedent, Marada Brewer, made an oral contract to leave the plaintiff the share of the property which would have gone to his father had Marada Brewer died intestate, survived by the father of plaintiff. The appellees contend that Goldie Brewer is an incompetent witness by reason of the provisions of Section 11257, Code, 1927, and plead that in so far as the alleged contract affects real estate it is violative of the Statute of Frauds, deny that any contract was entered into and contend that even if their contention relative to the Statute of Frauds and the incompetency of the witness is not sustained, the evidence is insufficient to support the plaintiff's contention. We find it unnecessary to pass upon the question as to whether or not the witness, Goldie Brewer, is an incompetent witness to testify as to a personal transaction between her and the deceased, and also unnecessary to pass upon appellees' contention relative to the Statute of Frauds; for assuming without deciding that all of the testimony given by the witness, Goldie Brewer, is admissible, the evidence is not sufficient to support the appellant's contention.

As to the sufficiency of the evidence to prove the alleged oral contract upon which the plaintiff relies, the rules of law applicable are well defined. The instant case is controlled by our pronouncement in In re Estate of Shinn, 207 Iowa 103. We there said:

"Since the appellants are asking for specific performance of an alleged oral contract, the burden is upon them to establish the contract as alleged, and the same must be established by clear, satisfactory, and convincing evidence. Lockie v. Baker, 206 Iowa 21. And the terms of the contract must be so certain and definite as to leave nothing to conjecture, or to be supplied by the court. Marti v. Ludeking, 193 Iowa 500; Lockie v. Baker, supra. Since the lips of the party against whom the contract is sought to be enforced are sealed by death, the case belongs to a class wherein the evidence in support of the alleged contract should receive the court's closest scrutiny. As is well said in Garman v. Wettengel, 199 Iowa 1150: 'This case

belongs to a class which usually challenges the scrutiny and the skepticism of the court. The evidence upon which such a case usually rests is such, in its very nature, that direct disproof is quite impossible. The defendants must rely largely upon circumstances of inconsistency and improbability. Such case imposes upon the court the special duty of receiving the direct testimony relied upon by plaintiff, subject to every fair test which tends to weaken its credibility.' In Houlette v. Johnson, 205 Iowa 687, being an action in which specific performance of an oral contract was asked after the death of the party against whose estate relief was sought, we said: 'Consistent with the seriousness of the situation, and in realization of the injustice that might otherwise be done, proof required must be "clear, convincing, and satisfactory," and the "acts said to constitute performance should be equally" plain, "definite, and referable exclusively to said contract." ' In Ross v. Ross, 148 Iowa 729, we said: 'The questions involved are almost wholly, if not entirely, questions of fact. * * * As the alleged vendor is dead, and cannot give his version of the matter, it is a wholesome rule of law that the testimony to sustain such a contract as is relied upon here must be clear, satisfactory, and convincing.' For other cases holding in conformity with the foregoing, see Holmes v. Connable, 111 Iowa 298; Groh v. Miller, 196 Iowa 1367; Stennet v. Stennet, 174 Iowa 431; In re Estate of Rich, 199 Iowa 902; Helmers v. Brand, 203 Iowa 587; Hart v. Hart, 181 Iowa 527.''

Has the alleged oral contract been established? Has it been established by the quantum of proof required? We answer in the negative. Whether it is the claim of the plaintiff that the decedent agreed to make a will devising the claimed share to the plaintiff, or agreed not to make a will is not shown. The settlement which was made was of the controversy relative to Marada Brewer's possession of the personal property belonging to the estate of the son. The witness, Goldie Brewer, had left the conference before a settlement was reached between Marada Brewer and the administrator. Her testimony necessarily relates to talk which was had before her leaving. She had no authority to make any settlement of the controversy with Marada Brewer. The Lide Brewer estate was represented by the personal representative, Darby, the administrator, and the settle-

ment of the controversy must necessarily have been made with him. If Marada Brewer had also taken improper possession of the harness, wagon and saddle, property belonging to the estate of Lide Brewer, this was also a matter for settlement, not as between Goldie Brewer and Marada Brewer, but as between Marada Brewer and the administrator of the Lide Brewer estate. It is quite clear, that the only contract which was made was the one of settlement as between the administrator upon the one hand and Marada Brewer upon the other relative to the possession by the latter of the personal property of the Lide Brewer estate. The witness testifies that she said that she was willing to settle if grandpa Brewer would withdraw his threats that he had made "to Floyd." The argument for the appellant is that the grandfather had previously threatened to disinherit the boy. There is no competent evidence in the record to that effect. It will be observed that the witness also testifies that the settlement as between her and Marada Brewer was to be final, "so that I would not be asking him for any more money, so it would not be possible to go to him for any more money he (Marada Brewer) would gladly settle." It is shown by the record that a later settlement was made as between Marada Brewer and the witness, Goldie Brewer, relative to another transaction, and at that time the witness gave to Marada Brewer the following receipt:

"Shenandoah, Iowa, June 22nd, 1912. Received of Marada Brewer the sum of One Thousand Dollars in full payment of all claims against him of every kind to this date, including all claims arising from any business transactions between the said Marada Brewer and my late husband, Elias Brewer.

(Signed) "Goldie Brewer."

It clearly appears that what she claims in her testimony that Marada Brewer was demanding to be a final settlement as between her and him was not even so considered by herself. The record abounds with inconsistencies and improbabilities. Whatever evidence there is bearing upon the establishment of the claimed oral contract is not of that clear, satisfactory and convincing character required by the law in such cases.

The judgment of the trial court is clearly right and the same is hereby affirmed.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.