JOSIE ANN BENTON MANN, Appellee, v. JENNIE A. NIES et al., Appellants.

No. 41095.

OCTOBER 27, 1931.

Gill & Gill, for appellee.

Martin Neilan, for appellants.

GRIMM, J.—On April 26, 1930, the appellee filed a petition in equity in the District Court of Woodbury County, Iowa, seeking to quiet title to Lot 12, Block 24, East Sioux City, Iowa.

In substance, she alleges that she is the absolute owner in fee simple of the said real estate and that as such absolute owner in fee simple and under color of title and as the homestead of the appellee, she has been in the open, notorious, exclusive and adverse possession of said property continuously for more than the past thirty years and still is in such possession of said premises. That her husband, Harrison J. Benton, died on or about March 12, 1913, and that she thereafter married one Jonathan Mann, who died on or about August 19, 1920.

It appears that no probate proceedings were ever had upon the estate of Harrison J. Benton or Jonathan Mann.

It is then alleged that said property was sold for taxes and a tax deed was obtained to the said premises by the Farmers Loan & Trust Company, a corporation in Woodbury County, Iowa, prior to 1903 and that thereafter on or about April 21, 1903, the appellee, under the name of Josie Ann Benton, purchased the said premises from the Farmers Loan & Trust Company and paid the purchase price for the same. It is alleged that by error, the title was taken in the name of Harrison J. Benton and Josie Ann Benton. It is alleged that said Harrison J. Benton paid no part of the consideration for the said conveyance and never claimed to own any part or interest in the said premises, except as the husband of the appellee.

By an amendment to the petition, certain parties were made defendants and it is further alleged that while the appellee was in possession of said real estate under the claim of ownership, as alleged, and in the open, notorious, exclusive and adverse possession of said premises, she made extensive improvements on the property and paid special assessments and taxes of many times the value of the premises. She alleges that no claim to or interest in any part of said premises has ever been made by any one of the said defendants.

The defendants (appellants) answered, alleging, among

other things, that they are the children of Harrison J. Benton and Susan Benton. That Susan Benton died in 1887 and that her husband, Harrison J. Benton, died in 1913.

It is claimed that at the time of the death of Susan Benton, she owned the lot in controversy. It is alleged that said Harrison J. Benton and the appellee (husband and wife) conspired and confederated together to obtain title to the property by permitting same to go to tax sale and subsequently buying the property from the purchaser at the tax sale.

By way of reply, the plaintiff (appellee) pleaded that the property in question was sold for taxes prior to 1883 and that on said tax sale, the said Lot 12 was sold to one C. M. Swan on or about January 11, 1883, and that said lot was taxed subsequently in the name of Susan Benton and C. M. Swan for several years and was again sold for taxes and went to tax deed and tax deed was executed by the then County treasurer of Woodbury County, Iowa, to the Farmers Loan & Trust Company in 1895, which tax title was subsequently purchased by the appellee.

It is also alleged that Harrison J. Benton, prior to his death, made an oral executed gift to the appellee of all of his interest in and to the said premises and title thereto, if any he had, and that the appellee, prior to and from and after the time of the death of the said Harrison J. Benton, was as owner in the possession of the said premises and remained in the possession of said premises under color of title and claim of ownership and has been continuously ever since the death of Harrison J. Benton in 1913 in the open, notorious, exclusive, adverse possession of the said premises as owner and under claim of ownership and made valuable improvements thereon and paid taxes and special assessments in excess of $3,500.00 during the said years at various times since 1903.

There is substantially no conflict in the evidence upon the main facts in the case. The appellants concede the following facts, to wit:

That on August 13, 1878, Susan Benton became the owner of the property in question by warranty deed from one H. H. Mason and wife and that Susan Benton and her husband, Harrison J. Benton, occupied said lot and the house thereon as her homestead until she died in 1887. She left surviving her, Harri-

son J. Benton, her husband, and eight children. It is conceded that Harrison J. Benton occupied the said premises as his homestead until he died in 1913. On December 7, 1891, said lot was sold for unpaid taxes of 1890 to the Farmers Loan & Trust Company and on June 14, 1895, a tax deed was issued to the said Farmers Loan & Trust Company. On November 11, 1895, Harrison J. Benton married the appellee. On November 3, 1898, a contract was entered into whereby the title to the premises in question, held by the Farmers Loan & Trust Company, by virtue of a tax deed, was purchased by the appellee and her husband, a deed being made thereto by the Farmers Loan & Trust Company on April 21, 1903, to Harrison J. Benton and Josie Ann Benton, the appellee, which deed was properly recorded on April 23, 1903. Harrison J. Benton died on or about March 12, 1913. On April 18, 1917, the appellee married Jonathan Mann, who died on or about August 19, 1920.

The appellee continued to occupy said premises as her homestead until after the beginning of this suit.

It clearly appears from the record that at the time the appellee, who at the time of the trial was 75 years of age, married Harrison J. Benton and moved onto the premises, the property was of very little value. The house on the lot was small and old and a portion of the lot had been swept away by the ravages of the Missouri River. Harrison J. Benton never made any contribution to the purchase of the title from the Farmers Loan & Trust Company or to any of the subsequent improvements made on the premises. The appellee put all she had and all she earned into these improvements. It appears that she worked out by the day, did washings and peddled fruit in her efforts to procure the money with which to add to the house and improve the premises generally. She paid all taxes of every kind and character assessed against the property. She bought material from a contractor and built the lot out as far as possible into the river.

In February, 1919, the appellee, then Mrs. Josie Ann Benton Mann, gave a mortgage on the premises for $1,000.00 to secure the payment of a certain note which she then executed. This mortgage was duly recorded on March 20, 1919.

It will be noted that the appellants do not claim any interest in this property as the heirs of Harrison J. Benton. They are claiming exclusively as the heirs of Susan Benton.

There are but three claims relied upon for reversal:

I.  It is first urged by the appellants that if the appellee knew she had no title, her occupancy, no matter how long continued, would not ripen into a title.  The trouble with appellant's position is that there is no evidence whatever in the record upon which a finding could be made that the appellee at any time knew that she did not have title to the property in question.  On the other hand, it satisfactorily appears she understood and believed that when she procured from the Farmers Loan & Trust Company the title which it had procured by tax deed from the county, she had a perfectly good title to the premises in controversy and the record satisfactorily shows that, resting in this belief from the time she first contracted to purchase said title from the Farmers Loan & Trust Company up to the time of the beginning of this suit, she had expended practically everything she was able to procure by her own services and otherwise, in improving the property.  She personally had paid the entire purchase price of the tax title owned by the loan company.  She personally made the contributions which resulted in the improvements to the premises and she continued to hold and occupy the premises openly and adversely under color of title from the date of said purchase from the loan company to the present time, a period of more than thirty years.

In this connection, it may be stated there is nowhere in the record any evidence whatever from which it can be inferred that there was any conspiracy between the plaintiff (appellee) and her husband, Harrison J. Benton, or between the appellee and anyone to commit any fraud upon any of the appellants in this case by permitting the property to go to tax sale and thereafter purchasing the title from the tax purchaser.

The deed from the Farmers Loan & Trust Company gave the appellee color of title.  She occupied it, believing the instrument gave her title and continued to so occupy the land in good faith for the statutory period and more.

II.  It is next claimed by the appellants "that appellants became the absolute owners of all said Lot 12, the homestead of their mother, Susan Benton, by their father, Harrison J. Benton, occupying all said lot as his homestead from the death of his wife, Susan Benton, in 1887 until his death in 1913."

One difficulty at least with this position is that the appellee

holds the property by deed from the loan company which obtained tax title to the property in question and under color of such ownership, she has been in possession in good faith as by law required for more than the statutory period.

She has also been in open, notorious and adverse possession under claim of right and color of title, by executed oral gift, by her husband, of his interest in said property for more than the statutory period. See Burch v. Wickliff, 209 Iowa 582.

III. It is next claimed by the appellants "that Harrison J. Benton by the record died owning one-half of said Lot 12. Appellee having lived on said lot since 1913 to 1930, she has elected to take a life estate in Harrison J. Benton's half of said lot with the fee in the appellants."

What has been herein said in reference to the second error has equal application to this alleged error, and moreover, these appellants are claiming not through Harrison J. Benton, but as heirs of Susan Benton, former wife of Harrison J. Benton.

The record satisfactorily shows that whatever interest Harrison J. Benton had, by virtue of the deed from the Farmers Loan & Trust Company to him and his wife, or otherwise, passed to the appellee herein by oral, executed gift. Upon the proof necessary in such cases, this court has said in Bevington v. Bevington, 133 Iowa 351, 1. c. 358:

"Undoubtedly such a gift (by parol) will be upheld only on a clear and unequivocal showing. Truman v. Truman, 79 Iowa 506, 721. This does not mean, of course, that the proof in support of the gift must be undisputed. Such a rule would mean, in practical operation, that no contested claim of gift could ever be established. The law requires nothing more than that the result shall not be reached by a mere balancing of doubts or probabilities, but by clear and unequivocal proof of facts upon which a court or jury may reach a reasonably satisfactory conclusion. In other words the rule does not require absolute certainty, but reasonable certainty of the truth of the ultimate fact in controversy."

We think the proof herein meets this test.

We do not deem it necessary to follow appellants into the many arguments presented in this case. It satisfactorily appears

that the appellee is the owner of the premises in question and that the trial court correctly held.

Therefore, the cause must be, and is,—Affirmed.

FAVILLE, C. J., and EVANS, MORLING and KINDIG, JJ., concur.