ELEANOR EGGIMANN-ECKARD, Appellee, v. EDWARD EVANS et al., Appellants.

No. 42954.

NOVEMBER 12, 1935.

Holly & Holly, for appellants.

C. B. Hextell, for appellee.

MITCHELL, J.—Eleanor Eggimann-Eckard commenced this action in equity, asking that title to three separate pieces of real estate in the city of Des Moines be quieted in her. She claimed the property as the adopted daughter of Catherine Eggimann, who died intestate. Her father, Evan Evans, and

her uncle, Edward Evans, the two defendants, filed answer and cross-petition in three divisions: First, a general denial; second, claiming that the plaintiff and defendants had entered into an oral contract, which was later reduced to writing, whereby it was agreed that all of the property, both real estate and personal property, of which Catherine Eggimann died seized, should be divided equally among the three parties, and stating that the personal property had been divided, asking that the real estate be divided in accordance with the terms of the alleged contract; third, the appellant Evan Evans claimed that prior to the death of Catherine Eggimann she had made a gift to him of one of the pieces of property, and that in pursuance thereto he had gone into possession of said premises, and asked that title be quieted in him. After an extended hearing, the court entered a decree, quieting title to the three pieces of real estate in the plaintiff, dismissing the cross-petition of the defendants.

Defendants, being dissatisfied with the judgment and decree of the lower court, have appealed.

For many years Catherine Eggimann and John Eggimann were residents of the city of Des Moines. They had no children of their own. Catherine Eggimann was the sister of Edward Evans and Evan Evans, and Evan Evans is the father of the appellee, Eleanor Eggimann-Eckard. When Eleanor was two years of age Evan Evans' wife secured a divorce from him, and after the divorce remarried, her name now being Louise Hutton. In the decree of divorce Louise Evans, now Louise Hutton, obtained the absolute custody of their two children, one of whom is the appellee. In May of 1917, Louise Evans, under the name of Louise Hutton, entered into articles of adoption with John and Catherine Eggimann, whereby the appellee was adopted by John and Catherine Eggimann. These articles of adoption were signed before a notary public and duly recorded in the office of the county recorder of Polk county, in Adoption Record 736, on page 320. Immediately thereafter the appellee went to live with her foster parents. The relationship that existed between Eleanor Eggimann-Eckard and John and Catherine Eggimann was a very pleasant one; they were fond of their adopted daughter and she was fond of them. Although Evan Evans and his divorced wife both lived in the city of Des Moines, neither of them had anything to do with their daughter after she was adopted, and

neither of them contributed to her support. There is no question about the adoption except that the name of the child's father, the appellant Evan Evans, was not stated in the adoption papers, neither did he sign them. John Eggimann, the foster father of appellee, died July 10, 1927, and Catherine Eggimann, foster mother of the appellee, died on the 19th day of September, 1932. Catherine Eggimann left no will. A few days after her death the appellee's husband and the appellants met in the law office of Gillespie & Moody, and a petition for letters of administration was prepared, Edward Evans being appointed administrator. It is not disputed that Catherine Eggimann died intestate; neither is it disputed that her husband had died prior to that time. They had had no children. There is no question that they signed the articles of adoption, whereby they consented to take the appellee as their own child. The question has been raised as to the validity of the adoption papers. If, however, the adoption papers are valid, then the appellee would be the sole surviving heir of Catherine Eggimann. Under chapter 508 of the Code of 1931, particularly sections 11986 and 12016, all of the property of a person dying intestate, and without leaving a surviving spouse, descends to and becomes the property of that person's children. Under section 3253 of the Code of 1897 as amended and set out in section 3253 of the 1913 Supplement, children legally adopted shall have the same rights and duties as exist by law between parent and child of lawful birth, and the right of inheritance from each other shall be the same as between parent and children born in lawful wedlock. Under section 10501-b6 of the Code of 1931, we find the same section re-enacted and giving an adopted child the same right of inheritance as exists between children born in lawful wedlock. And under section 12017 we find that provision is made in case of the death of an adopted child leaving no issue or surviving spouse, then his foster parents inherit from him as if they were natural parents. We see from this that under our law a child that is legally adopted has the same status as a child born in lawful wedlock.

I. The first question raised in this court is that the articles of adoption did not comply with sections 3251 and 3252 of the Code of 1897. Section 3251 is as follows:

"Sec. 3251. Consent of parents or officer. If living, and not divorced or separated, the consent of both parents; if di-

vorced, separated or unmarried, the consent of the parent lawfully having the care and providing for the wants of the child; or if either is dead, then the consent of the survivor; or if both are dead, or if the child has been abandoned, that of the mayor of the city; or if not in a city, of the clerk of the district court of the county where it is living, shall be given to such adoption by an instrument in writing, signed by the parties or party consenting, which shall give the names of the parents if known, the name of the child if known, the name of the person adopting it, the place of residence of all if known, the name by which such child is thereafter to be called, and also state that it is given to the person adopting for the purpose of adoption as his own.''

It is the claim of the appellants that the articles of adoption did not give the name of the father, and that because of this omission the articles of adoption were fatally defective. As Louise Evans-Hutton, the mother of appellee, under the divorce decree, was given the control and custody of the child, it therefore was not necessary for the father, Evan Evans, to sign or consent to the adoption.

A very similar situation as confronts us in this case confronted this court in the case of Sires v. Melvin, 135 Iowa 460, at page 469, 113 N. W. 106, 110, wherein, in a very able opinion by the late Justice Weaver, this court said:

''That failure to observe nonessentials or mere matters of detail will not operate to defeat the clear intention of the parties. In the very nature of the transaction, the essential thing in the adoption of a child is the consent thereto by the proper parties expressed in the manner provided by law.''

And at pages 471-2-3-4, we find:

''We have then to ask whether, under the rule of this statute and of our own decisions, some of which we have cited, the adoption of Ruth Alice Melvin can be upheld. That instrument is set out in full in the first paragraph of this opinion, and the sole objection thereto is that it does not state the name of the child's father. The paper is executed by the mother, Mary E. Jones, who is described as the only legal surviving parent of Ruth Jones, lawfully in the care and custody of her said mother, from whom the father had separated. The language embodying this statement is somewhat confused, but, fairly construed, it is

to be interpreted either as a statement that the father of the child was then dead, or that he had separated from or abandoned the mother, leaving to her the sole care and custody of their offspring. In either case, the statute provides that the consent of the mother alone is required to make a valid deed of adoption. Code, section 3251. This section provides that both parents must give their consent, except where the parent lawfully in charge of the child is divorced, separated, or unmarried, in which case the consent of such parent alone is sufficient. It also provides that the writing shall give the names of the parents of the child, the name of the child, the name of the adopting parent, the place of residence of all, and the name by which it is thereafter to be called. The deed in question does give the name of the mother, and recites the facts showing that she is the one and only person entitled to give the child in adoption. It gives also the names of the adopting parents, the name by which the child is to be known, and every other fact indicated by the statute to insure the sufficiency of the instrument, unless we are to hold that the failure to describe the father by name invalidates it. We are not willing to announce such a rule. To do so is to abandon the distinction which we have heretofore recognized between essentials and non-essentials, and to deny effect to the statute requiring liberal construction of legislative enactments 'to promote their objects and assist the parties in obtaining justice,' application of which requirement to cases of this kind we have already affirmed.

"The evident purpose of the provision requiring the name of the parents be stated in the deed is to make the instrument show or identify the persons whose consent is necessary to a valid adoption. It does show that fact as fully and completely as if the name of the father had been stated in full. It states the name of the mother, and sets out the particular facts which made her the only person having the legal right or power to give the child in adoption, and this we are disposed to regard a sufficient compliance with the law. Speaking of statutes for the adoption of children, the California court has said that, while the right of adoption is a creation of statute, in order 'to effect such adoption there should be substantial compliance with all the essential requirements of the law under which the right is claimed; but, in determining what provisions of law are essential, and therefore mandatory, the statute is to receive a sensible construction, and its intentions are to be ascertained, not from the literal meaning

of any particular word or single section, but from a consideration of the entire statute, its spirit, and purpose.' In re Johnson's Estate, 98 Cal. 531, 33 P. 460, 21 L. R. A. 380. 'It is one of the great maxims of interpretation to keep always in view the general scope, object, and purpose of the law, rather than the mere letter. He who considers merely the letter of an instrument goes but skin deep into its meaning.' Rutlege v. Crawford, 91 Cal. [526], 533, 27 P. 779, 13 L. R. A. 761, 25 Am. St. Rep. 212; Broom's Legal Maxims, 611. 'A strict literal adherence to the letter and form of a statute in minor and nonessential particulars will often defeat a remedy or destroy a right which it was the principal intention of the Legislature to create or preserve. When the statute directs an act to be done in a certain way or at a certain time, and a strict compliance as to time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded.' People v. Supervisors, 34 N. Y. [268], 272.

"There is nothing in this statute allowing the adoption of children which calls for narrow or strict construction to make it accord with a normal sense of propriety or justice. On the contrary, the practice by which childless or benevolently inclined persons adopt as their own the offspring of others, usually of those who are unable to give their children the advantages of a good home, is one to be commended and encouraged, and the statute which permits it should not be construed with such technical nicety as to defeat the very purpose it is intended to subserve. Of the thousands of adoptions which have been made in this state, and are relied upon by the parties in interest as valid and effective, I am safe in saying that very few would stand the test of legal inquiry, if the excessive strictness of construction demanded by the appellees herein should be upheld. It is the privilege of foster parents to give to an adopted child all the rights which would pertain to it had it been born to them in lawful wedlock, and when they have substantially and in good faith complied with the requirements of the statute, have taken the child to their own home, taught it to love and serve them, and to believe that it has been endowed by them with all the rights of a child of their own blood, every principle of justice and equity forbids that we should disappoint those natural and just expectations and impoverish such child for the benefit of collateral relatives. This proposition has the support of the clear weight of

authority, and it would be extremely unfortunate if this court should give its adherence to a rule the practical application of which would in almost every instance work rank injustice. In re Johnson's Estate, supra; Bancroft v. Bancroft's Heirs, 53 Vt. 9; Fosburgh v. Rogers, 114 Mo. 122, 21 S. W. 82, 19 L. R. A. 201; Abney v. De Loach, 84 Ala. 393, 4 So. 757; Barnard v. Barnard, 119 Ill. 92, 8 N. E. 320.

"It follows, from the conclusions announced in this opinion, that a decree should have been entered by the trial court confirming the plaintiff's title to one-third of the 40-acre tract in question, and the title of defendant Ruth Alice Melvin to the remaining two-thirds thereof.

"The decree of the district court is therefore reversed, and cause remanded for decree in harmony with this opinion."

Thus, we find that this court is inclined to abandon the old rule of strict construction and to place a fair and reasonable construction upon proceedings under statute leading to adoption, with the view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings, whose only interest is to defeat the relations which the adopted parents always recognized and never questioned. It is doubtful if we could secure a better illustration of the soundness of adopting such a rule than the case at bar. Catherine Eggimann, the foster mother, was the sister of Evan Evans, the natural father of the appellee. He and Edward Evans, uncle of appellee, are now complaining because the name of Evan Evans was not in the articles of adoption. It is not claimed that all these years he had not known the whereabouts of his child. It is not claimed that the father or the uncle desired to know the whereabouts of the child, so that they could assist in the care and bringing up of the girl. Both the father and the uncle knew at all times where the child was, and yet they took no interest in her welfare. They did not contribute to her support and keep during all of these years. Not until Catherine Eggimann died and it appeared that she had some property did the father and the uncle raise any question as to the adoption of this girl by her aunt back in the year 1917. They did not make this claim for the purpose of sharing anything with the appellee, but for the sole purpose of depriving her from inheriting from her foster mother.

It must not be overlooked that this is not a contest between an adopted child and its foster parents; neither is it a contest between an adopted child and children born in lawful wedlock. It is a contest between an adopted child and collateral heirs of the foster mother. In this case those collateral heirs happen to be the uncle and the father of this adopted child. The appellants are asking that the statute be construed to the letter, in order that they may profit. Under the decisions of this court, the mere failure to dot an "i" or cross a "t" is not sufficient to say that the adoption papers were not legal and properly prepared. So in the case at bar the appellee was the adopted daughter of Catherine Eggimann and as such she was entitled to inherit.

II. The next claim of the appellants is that they entered into a contract with the appellee for an equal division of the property of Catherine Eggimann; that is, one-third to each.

Shortly after the death of Catherine Eggimann they met at the law office of Attorney Moody in the city of Des Moines. There were present at that meeting the appellee, both of the appellants, Mr. Moody, the attorney, and Mr. Eckard, the husband of the appellee. It is the claim of the appellants that the cash belonging to the estate was divided equally between the three of them, whereas it is the claim of the appellee that she gave to her uncle and to her father certain parts of this money. There is no question of the meeting in the office, and there is no question of the division of the money. The appellants, in attempting to prove this contract which they claim was entered into, relied principally upon their own testimony. They claim that they did not know at that time that Eleanor had been adopted by her aunt, and yet, in the report filed by Edward Evans as administrator of his sister's estate, was set out the fact that the sole surviving heir of the decedent was her adopted daughter, Eleanor Eggimann-Eckard. It is Edward Evans' claim that when he signed and swore to this report he did not know that any such statement was contained in the report. As against the evidence of the appellants we find the evidence of the appellee and of several disinterested witnesses, all of whom testified that there was no agreement to divide the estate equally, and that no written contract was ever prepared. The appellants did not produce any written contract. No consideration was shown for such a contract. The appellants had no claim against the estate of Catherine Eggimann. They were entitled to no

part of the estate. The burden was upon the appellants to establish by clear and convincing evidence the alleged contract whereby the appellee agreed with the appellants that the property of Catherine Eggimann should be divided into three parts, one part to the appellee and one part to each of the appellants.

In the case of Myers v. Myers, 197 Iowa 1137, at page 1139, 198 N. W. 484, this court said:

. "It is well settled that to establish either a parol gift or contract of conveyance of land the one so claiming must establish the gift or contract by clear, unequivocal, and definite testimony, and that the acts claimed to be done thereunder should be equally clear and definite, and referable exclusively to the contract or gift. Williamson v. Williamson, 4 Iowa 279; Truman v. Truman, 79 Iowa 506, 44 N. W. 721; Chew v. Holt, 111 Iowa 362, 82 N. W. 901; Briles v. Goodrich, 116 Iowa 517, 90 N. W. 354; Bevington v. Bevington, 133 Iowa 351, 110 N. W. 840, 9 L. R. A. (N. S.) 508, 12 Ann. Cas. 490; Ross v. Ross, 148 Iowa 729, 127 N. W. 1034; Farlow v. Farlow, 154 Iowa 647, 135 N. W. 1; Runnels v. Anderson, 186 Iowa 1370, 173 N. W. 91; Lembke v. Lembke, 194 Iowa 808, 187 N. W. 863."

Again in the case of Mann v. Nies, 213 Iowa 121, at page 126, 238 N. W. 601, 603, this court said:

"The law requires nothing more than that the result shall not be reached by a mere balancing of doubts or probabilities, but by clear and unequivocal proof of facts upon which a court or jury may reach a reasonably satisfactory conclusion. In other words the rule does not require absolute certainty, but reasonable certainty of the truth of the ultimate fact in controversy."

In the case at bar the appellants have failed to offer such proof. In fact, the evidence clearly shows that no such contract was ever entered into.

Other questions have been raised by the appellant. Careful consideration of them shows that the lower court did not err, and it therefore follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.

KINTZINGER, C. J., and ALBERT, ANDERSON, DONEGAN, POWERS, HAMILTON, RICHARDS, and PARSONS, JJ., concur.